Charles Vykruta, Plaintiff-Appellee, v. Thomas Hoist Company, Inc., a Corporation, Defendant and Third Party Plaintiff-Appellant, v. Edward Duff and Richard H. Boldt, Jr., d/b/a J & E Duff, Third Party Defendants-Appellees.

Gen. No. 50,459.

First District, Third Division.

September 29, 1966.

Vogel & Vogel, of Chicago (David F. Holland, of counsel), for third party plaintiff appellant.

William N. Anthony and Joseph Koucky, of Chicago (Leonard M. Ring, of counsel), for plaintiff-appellee.

Harry I. Parsons, of Chicago (Norton Wasserman and Orner & Wasserman, of counsel), for third party defendants-appellees.

MR. JUSTICE DEMPSEY delivered the opinion of the court.

The plaintiff, Charles Vykruta, was injured while working as a bricklayer for J & E Duff, mason contractors, who were engaged in building an addition to a gymnasium. The Duff Company had rented a hoist from the defendant, Thomas Hoist Company, to lift bricks, mortar and other material from the ground floor to the upper parts of the building. The plaintiff rode the hoist and was injured. He brought this action against the Thomas company to recover damages for his injuries allegedly occasioned by the defendant's violation of the Structural Work Act. (Ill Rev Stats, c 48, pars 60–69 (1955).)

Thomas filed a third party complaint for indemnity from Duff asserting that Thomas was not guilty of active negligence or wilful misconduct and that if Vykruta was entitled to recover from Thomas it was a result of the misconduct of Duff. A jury returned a verdict for

293

Vykruta and judgment was entered thereon. The trial court directed a verdict for Duff, the third party defendant, and entered judgment. Thomas appeals from both judgments contending that it did not have charge of the work within the meaning of the Act, that the jury was improperly instructed and that the court erred in directing a verdict for Duff.

The hoist was designed and manufactured, and installed on the job site by Thomas. When work on the lower part of the building had been completed Thomas returned to the site and extended the hoist to its full height. It was known as a "laddermatic" hoist because it resembled an extension ladder and could be lengthened or shortened to reach different heights. It had a platform, large enough to carry a single wheelbarrow, upon which materials were placed. The platform was elevated by a steel cable of 10,000 pounds tensile strength which was attached to the platform and ran from the platform up the front of the ladder to a pulley at the top. The cable, which was powered by a gasoline engine, passed through the pulley and then ran down to a drum around which it wound as the platform rose. The cable and the pulley were not enclosed and there was no safety rail around the platform. The descent of the platform was controlled by a centrifugal brake. When the platform was lowered it would first descend of its own weight until it reached a speed which caused the brake to restrain it.

The Duff company had six or seven bricklayers and four laborers on the job. The laborers ran the hoist. One laborer loaded materials onto the platform at the ground level and sent them up to the level where the bricklayers worked; there another laborer removed the materials from the platform and took them to the bricklayers. On the morning of the occurrence several bricklayers came to work at the same time as Vykruta. They placed their tools on the platform and climbed ladders

to the third floor where they were working but Vykruta, after putting his tools on the platform, stepped on it himself and rode it upward.

His fellow-employees testified that he held onto the cable with his right hand, that this hand was placed high on the cable, and that as the platform neared its stopping place his right hand became caught in the pulley. As he jerked his hand free the cable came off of the pulley, struck a crossbar beneath it and snapped; the platform dropped and he fell about ten feet. Vykruta testified that he did not hold onto the cable, that he stood on the platform with his hands at his side, that when the platform reached the upper level he started to remove his tools, that he had one foot on the platform and the other on the upper floor of the building, that the platform began to slip downward and that in reaching for a handhold to save himself from falling he struck his right hand between the cable and the pulley. After falling to the next floor he managed to grab another cable on the hoist with his left hand and arrested his fall. He was right-handed and three fingers on this hand were badly injured.

The hoist was inspected after the accident. Except for the severed cable and some damage to the platform caused by the fall, the hoist was in excellent condition. The cable itself was not worn and there were no defects or evidence of malfunction in the pulley, motor, drum, clutch, brakes, ladder or control system. An expert who examined the hoist gave his opinion, in answer to a hypothetical question, that the cable was peeled from the pulley causing the cable and platform to drop and that the cable was cut as a result of being pulled over the crossbar.

Vykruta testified on direct examination that he had ridden the hoist before; however on cross-examination he said this was the first time he rode it. His attorney reverted to the subject on redirect examination and

Vykruta again said that the first time he rode on the hoist was the day he was injured. He testified that prior to this day he had seen some of the workmen riding on the hoist and that he had seen men riding on hoists on other jobs. He also said that he had never been told not to ride the hoist and that he did not see any warning signs posted around it. In this he was contradicted by a laborer who operated the hoist. This witness testified that not only the foreman but some of the workers warned Vykruta, who had started to work on this job about a month and a half earlier, not to ride the hoist. The witness further testified that there was a "NO RIDERS" sign on the platform.

One more pertinent evidentiary topic must be mentioned: Vykruta's testimony indicated that Thomas repaired the hoist. His exact words were: ". . . there was a couple of times they were fixing that hoist all the time—the company that they rented it from." However, his testimony on cross-examination conflicted with his direct testimony:

> "Something went wrong with the pulley. . . . [T]hey called that mechanic up there. I don't know who the mechanic worked for. I don't know whether he worked for Thomas Hoist. . . . They had trouble with the machine. They had to fix it about three times. . . . I don't know who it was who was fixing it but it could have been Mr. Duff. I don't know if he hired somebody to fix it. . . ."

■ Vykruta's complaint was in two counts. The second count was for common-law negligence and alleged that the defendant negligently manufactured, assembled, tested and maintained the hoist. At the conclusion of the plaintiff's case the defendant's motion for a directed verdict was allowed as to count II. The record does not disclose the trial court's reason for granting the motion but the court must have been of the opinion that the plain-

tiff either did not make out a prima facie case or was guilty of contributory negligence as a matter of law. There has been no appeal from the court's order as to count II. Whether Vykruta was guilty of contributory negligence is immaterial because no such defense is available to a defendant in an action brought under the Structural Work Act. Schultz v. Henry Ericsson Co., 264 Ill 156, 106 NE 236 (1914); Brackett v. Osborne, 44 Ill App2d 441, 195 NE2d 8 (1963).

We are concerned, therefore, with count I only and the principal question is whether Thomas is subject to liability under the Structural Work Act. For the purposes of the present case the pertinent provisions of the Act are as follows:

> "§ 1. That all scaffolds, hoists . . . erected or constructed by any . . . corporation . . . for use in the . . . alteration . . . of any . . . building . . . shall be erected and constructed, in a safe, suitable and proper manner, and shall be so erected and constructed, placed and operated as to give proper and adequate protection to the life and limb of any person or persons employed or engaged thereon, . . .

> "§ 9. Any owner, contractor, sub-contractor, foreman or other person having charge of the erection, construction, repairing, alteration . . . of any building . . . within the provisions of this act, shall comply with all the terms thereof, . . .

> "For any injury to person . . . occasioned by any wilful violations of this act, or wilful failure to comply with any of its provisions, a right of action shall accrue to the party injured, . . ."

The defendant's primary contention is that there was a total absence of proof that it violated the above provisions and therefore the court should have granted its

motion for a directed verdict or entered a judgment for it notwithstanding the verdict. It argues that it did not have charge of the construction of the gymnasium or of any phase of the construction, that the hoist was rented, that the hoist was for materials and not for human beings and was not a hoist or scaffold within the meaning of the Act. The plaintiff replies that the Act is a comprehensive safety statute intended to compel all contractors connected with the work to provide safe hoists in order to prevent injury to workmen in a hazardous occupation. He argues that the Act should be interpreted liberally and applied broadly and that it was intended to cover a supplier of equipment upon which workmen are employed or engaged. After analyzing the plaintiff's complete thesis we believe it can be divided into three major propositions and that a fair synopsis of each one is as follows:

I 1. A supplier of a hoist or scaffold comes under the Act;
 2. If the hoist or scaffold is defective the supplier can be held liable if he knew or should have known of the defect.

II 1. A hoist or scaffold used in the construction of a building is part of the construction;
 2. A supplier of a hoist or scaffold is, therefore, in charge of a phase of the construction;
 3. If the hoist or scaffold is defective the supplier is liable if he knew or should have known of the defect.

III 1. The hoist supplied by Thomas was used in the construction of the gymnasium;
 2. Thomas retained control of the hoist, by maintaining it and extending it during the course of construction;
 3. Thomas, therefore, was in charge of a phase of the construction;

4. The hoist was defective;
5. Thomas as the designer and manufacturer of the hoist knew it was defective or reasonably should have known that it was;
6. Thomas, therefore, committed a knowing violation of the Act.

The Structural Work Act has many safety provisions but only one section (section 8) provides a penalty of its own for the violation of the duty imposed by that section. The violation of section 1 and all other sections is controlled by section 9 which imposes criminal penalties upon those who come under the Act and do not comply with it, and imposes a civil liability upon those who are subject to the Act and who wilfully violate it or wilfully fail to comply with its provisions. This civil liability, unless otherwise circumscribed by a particular section, is imposed upon those having charge of the construction. The phrase "having charge of" has been the subject of extended judicial exposition. An examination of two cases, Gannon v. Chicago, M., St. P. & P. Ry. Co., 22 Ill2d 305, 175 NE2d 785 (1961) and Larson v. Commonwealth Edison Co., 33 Ill2d 316, 211 NE 2d 247 (1965), will be helpful in interpreting the language of the Act and its application to the case at bar.

The Gannon case involved as plaintiff an employee of an independent contractor who erected a defective scaffold. The suit was against the defendant owner who had engaged the contractor to construct a dock on its premises. The court held that liability could be imposed only if the defendant was in charge of the work. In noting that liability attached only for wilful violations, the court stated that, "Wilful violations means knowing violations, and in the nature of things they can be perpetrated only by persons directly connected with the operations, and not by virtue of mere ownership of the premises." It also stated that "before civil liability may

be imposed upon the defendant owner under section 9 of the Act, it must appear that he had charge of the construction operations involving the violation."

In Larson the plaintiff, an employee of Paschen, an independent contractor, was injured in a fall from a scaffold erected by his employer. The defendant Commonwealth Edison, the owner of the premises, had entered into contracts with various contractors; most of the contracts, designs and specifications, including two contracts with the plaintiff's employer, were prepared by defendant Sargent & Lundy, consulting engineers. The trial court instructed the jury that Edison could not be held liable unless it "had charge of the work by retaining control and supervision of such work being performed by Paschen Contractors, Inc.," and directed a verdict for Sargent & Lundy. The Appellate Court affirmed the judgments for the defendants, stating that "the terms 'supervision and control' are used interchangeably with 'in charge of'. . . ." 48 Ill App2d 349, 199 NE2d 265 (1964). On appeal to the Supreme Court, the judgments were reversed. The court held that the phrase "having charge of" is a generic term of broad import, and though it may include supervision and control it is not confined to it. That is, the court denied that "supervision and control" is the relationship between a defendant and the construction project which must be shown before the defendant can be held liable. It stated that "the thrust of the statute is not confined to those who perform, or supervise, or control, or who retain the right to supervise and control, the actual work from which the injury arises. . . ." The court also stated that, "It may be conceded that Sargent, like an owner, must have some direct connection with the construction and alteration operations before it can be deemed in charge of the work, and thus subject to duty and liability under the act."

■ These cases clarify the standards by which the claim of the plaintiff that Thomas is subject to liability under the Act is to be tested. To be liable a defendant must be in charge of the work; he must have some direct connection with the construction before he can be deemed in charge of the work; he can perpetrate a knowing violation only if he is directly connected with the operation.

■ We do not agree with the first proposition of the plaintiff's thesis that a supplier of a hoist or scaffold comes under the Act and that the supplier can be held liable if the hoist or scaffold is defective. As we have pointed out, liability is governed by section 9 of the Act. The broad coverage advocated by the plaintiff ignores the limited application of section 9 to those having charge of the construction. The mere furnishing of equipment does not render one in charge of the construction or that part of the construction in which the equipment is used. If the equipment proves to be defective an injured party may possibly have a common-law action against the supplier of the equipment but he has no right to recover under the Act. The trial court adopted the plaintiff's proposition and instructed the jury accordingly. It refused the defendant's instructions which stated that the plaintiff had the burden of proving that the defendant was a person having charge of the construction of the building in question and gave a peremptory instruction at the request of the plaintiff which failed to include the statutory requirement of "having charge" under either the plaintiff's theory of having charge of the hoist or the defendant's theory of having charge of the construction. An instruction which is peremptory in character and directs a verdict for either party must contain all the elements necessary to sustain such a verdict. Gannon v. Chicago, M., St. P. & P. Ry. Co., 25 Ill App2d 272, 167 NE2d 5 (1960). The

giving of this instruction was error and would require the reversal of the judgment apart from the determination of the other issues in the case.

■ The plaintiff's second proposition is that a hoist or scaffold used in the construction of a building is part of the construction and that a supplier of such equipment is, therefore, in charge of this phase of the construction. Although a hoist or scaffold which is used in the construction of a building can be regarded as part of the construction, the supplier of such equipment is not ipso facto in charge of the work for which the equipment is used. Were it otherwise, similar reasoning would dictate that a contractor who supplied a component of the hoist or scaffold would be in charge of the work and so subject to liability under the Act. Such an interpretation of the statute places too much strain on its wording. The construction given it by the Gannon and Larson cases is that a direct connection with the work is necessary before liability can be predicated on the statute. Again, the trial court gave an instruction which embodied the plaintiff's proposition. After quoting section 1 of the Act the instruction went on to say that, "Such statute further provided that any person, firm or corporation having charge of the erection, construction or placement of such hoist shall comply with the terms thereof." It was error to give this instruction.

■ The third proposition in the plaintiff's thesis is that under the facts of this case Thomas was in charge of the hoist (and thus in charge of a phase of the construction) and knew or should have known that the hoist was defective. We disagree with the plaintiff in both particulars. The evidence does not establish that Thomas had charge of the hoist or the requisite direct connection with the construction. The relevant evidence was this: Thomas leased the hoist to Duff, delivered and installed it on the job site. At some unspecified time Thomas extended the hoist to its full height and

302

might have [we say "might have" because of the plaintiff's self-contradictory testimony] returned to the site to repair the hoist. It had no employees on the job; it did not operate the hoist or have charge of its operation; it made no inspections while the hoist was in operation nor does it appear that it had the right to do so. It could not tell Duff when to use the hoist or when not to. Duff, not Thomas, furnished the hoist to the workmen; Duff, not Thomas, had charge of it; Duff's employees, not Thomas', ran it. If the hoist could be considered an integral part of the construction it was because of the use Duff made of it, not because Thomas delivered it and set it up. Thomas' connection with the construction was indirect. As the Gannon and Larson cases pointed out, mere ownership of the premises is not enough to establish liability and, similarly, mere renting of the equipment and the repositioning and repairing of equipment which has ceased functioning are not enough. In both instances there must be something more; the owner or the supplier must be directly connected with the operation.

■■ ■■ Also, there was no evidence that Thomas knew prior to the accident that the hoist was used for carrying personnel. If the plaintiff saw workmen riding on it and if he saw workmen at other jobs riding hoists there is no evidence that this was done when representatives of the defendant were present, or that this information was communicated to the defendant, or that the defendant should have known that this was being done. Thomas rented a hoist that was to be used for a specific and limited purpose. The hoist was not defective for the purpose for which it was designed and supplied. Thomas had no obligation to station guards at the hoist to prevent Duff's employees from riding on it and it was not responsible for the misuse of its apparatus; that the plaintiff chose to ride on it rather than climb the available ladders did not transform it

303

from a materials to a passenger hoist. Until such time as Thomas knew or should have known that the hoist was being used by workmen it had no duty to redesign the hoist. It is to no effect that Thomas knew the cable and pulley were exposed, for this condition was not dangerous to human beings if the hoist was used for its proper purpose—the lifting of materials. Even if a contractor is in charge of the work the evidence must show that on occasions prior to the injury the plaintiff or other workers had used as a scaffold or hoist an object not designed for such use and that this practice or usage was or reasonably should have been known to the defendant. Gundich v. Emerson-Comstock Co., 21 Ill2d 117, 171 NE2d 60 (1960); Oldham v. Kubinski, 37 Ill App2d 65, 185 NE2d 270 (1962); Bounougias v. Republic Steel Corp., 277 F2d 726 (7th Cir 1960).

Thomas not having been in charge of the hoist and not having had any direct connection with the construction cannot be held to have committed a wilful violation of the Structural Work Act, and the judgment for the plaintiff must be reversed.

The decision in this appeal makes unnecessary a decision in the third party suit.

The judgment is reversed and the cause remanded with directions to enter judgment for the defendant.

Reversed and remanded with directions.

SULLIVAN, P. J. and SCHWARTZ, J., concur.