MARK BOUILLON, Plaintiff-Appellant, v. THE HARRY GILL COMPANY et al., Defendants-Appellees.

(No. 72-128; )

Fifth District—September 28, 1973.

*Rehearing denied November 5, 1973.*

Cornelius T. Ducey, of Johnson, Ducey & Feder, Ltd., of Belleville, for appellant.

Vincent J. Hatch, of Brady, Donovan & Hatch, of Belleville, for appellee Litchfield School District.

John W. Leskera, of Oehmke, Dunham, Boman and Leskera, of East St. Louis, for appellee The Harry Gill Company.

Mr. JUSTICE GEORGE J. MORAN delivered the opinion of the court:

Plaintiff was injured while practicing "pole vaulting" on the athletic fields of and under the supervision of defendant Litchfield Public School District No. 12, with pole vaulting "standards" manufactured and sold by defendant manufacturer The Harry Gill Company. Plaintiff brought this action to recover damages for personal injuries. The action against the Manufacturer was based on strict liability for the allegedly defective design of the pole vaulting standards; while the action against the School District was based on its alleged negligence and wilful and wanton misconduct. The jury returned a verdict for both defendants upon which judgment was entered.

The accident which gave rise to this lawsuit occurred on April 20, 1961. Plaintiff Mark Bouillon was a 12-year old seventh grade student at Litchfield Junior High School "trying out" for the school track team. He was a beginning pole vaulter, having attempted only 40 or 50 vaults in the previous one and one-half weeks. He was in a group of beginning vaulters who were taking turns attempting to vault a six-foot-high crossbar. The crossbar was placed on two standards which were between 10 and 15 feet apart. Each standard had a round, cast iron base weighing 17 pounds, and upright vertical components weighing 23½ pounds. Most witnesses testified that the basis of the standards were placed on concrete blocks flush with or slightly lower than the ground level, but the coach testified that they were not placed on concrete blocks. Several witnesses testified that the blocks were not large enough to hold the entire base of the standards. There was also conflicting testimony as to whether these blocks were cracked, rough or uneven so as to cause the standards to be wobbly. Some witnesses testified that the standards were wobbly but that they did not notice any wobbliness the day of the accident. Other witnesses thought the uneven blocks caused the unstable standards to fall sometimes, but not necessarily this time. There was also testimony that a defect in one of the standards could cause it to be unstable. There were conflicts in testimony as to whether wooden pegs had been taped to the standards to hold the crossbar at a lower level for beginning vaulters, and what effect this would have on the stability of the standards. There were also conflicts in testimony as to whether tape had been placed on the pegs which support the crossbar, and if so, whether this affected the safety of the vaulters in various situations.

Witnesses who saw the accident varied in their accounts of what hap-

pened. Plaintiff made a proper approach to the bar. Several witnesses testified that his vault carried him to the right side of the center of the crossbar. Testimony conflicted as to whether plaintiff cleared or hit the crossbar, whether he released the pole backwards or "rode the pole through" the crossbar, and whether the pole hit either standard or whether the pole hit the standard on the right-hand side. The right-hand side standard fell into the landing pit. Testimony conflicted as to whether the standard fell because of the crossbar being hit, because the pole hit the standard, because the standard was wobbly, or because of a combination of these factors. Plaintiff landed on his stomach in the pit, and the standard landed on him in such a way that a steel peg (used to support the crossbar) pierced the back of his head, resulting in serious injury.

Experts for plaintiff and defendants gave conflicting testimony concerning the safe weight for the base of the standards and whether some material other than steel would make safer pins. In general, the witnesses for the plaintiff claimed that the base of the standard should have been heavier and that some material such as rubber or plastic should have been used for the pins instead of steel. Defendant's experts in general testified that the weight of the base of the standard was appropriate and safe and that the use of steel pins was reasonable and appropriate in accordance with the use to be made of the standards. Plaintiff contends that the verdict in favor of The Harry Gill Company was against the manifest weight of the evidence.

■■ The doctrine of strict liability, at least as applied to products other than food and drugs, was introduced by the case of *Suvada v. White Motor Co.*, 51 Ill.App.2d 318, aff'd, 32 Ill.2d 612, 210 N.E.2d 182. A distinguishing feature of this doctrine, apart from its effect on the requirement of privity, is that it does not depend on proof of negligence. This does not mean, however, that a manufacturer is an insurer in all cases, since there must be proof that the injury or damage resulted from a condition of the product, and that the condition was an unreasonably dangerous one, and that the condition existed at the time the product left the manufacturer's control. *Dunham v. Vaughan & Bushnell Mfg. Co.*, 42 Ill.2d 339, 247 N.E.2d 401, held that products are *defective* which are dangerous because they fail to perform in a manner reasonably to be expected in light of their nature and intended function. That case also held that the question as to whether a defect exists and therefore whether a product is "unreasonably dangerous" is a factual question which is best left to the jury. Only where it is clearly evident that the jury verdict was palpably incorrect should the reviewing court disturb the verdict. (*Corder v. Smothers*, 86 Ill.App.2d 237.) Credibility of the

witnesses and the weight and inferences to be drawn from the evidence are questions for the jury and not for the reviewing court to decide. (*Palmer v. Poynter,* 24 Ill.App.2d 68.) Generally, it is for the jury to determine conflict in the testimony of the experts. (*O'Keefe v. Lithocolor Press, Inc.,* 49 Ill.App.2d 123.) In order for a verdict to be against the "manifest weight of evidence", it must appear that conclusions opposite to that reached by the jury must be clearly evident or that the verdict is palpably erroneous and wholly unwarranted by the manifest weight of the evidence. *Allen v. Yancy,* 57 Ill.App.2d 50.

In our opinion, the verdict was not against the manifest weight of the evidence.

■■ Plaintiff also contends that the court erred in admitting expert testimony without sufficient facts being in evidence upon which to base an opinion. Defendant manufacturer's expert witness Don Laz, a mechanical engineer and expert pole vaulter, was asked questions about taping a peg onto a standard to hold a crossbar, including:

"Realizing this is an athletic event with a stick taped on the pole, will you tell us its effect in your judgment and in your opinion, its effect on bringing the standard down on somebody if you hit this crossbar under those circumstances?"

Over objection of counsel, he gave the following answer:

"Well, I think I know what to answer and this is in the event, to an upright or to a standard a stick is taped, I have the following opinion: No. 1, that the dislodging of this pin would be virtually impossible. I think that depending on the size of it, of course, it would probably be broken, that while it would be firmly fastened to the upright I feel that it could be jostled or moved somewhat. I feel that it's possible that some of the sticky side of the tape could be in contact with the cross-bar and because of that and perhaps the irregularity of such a pin that the ability to topple a standard would be increased."

Plaintiff cites the case of *Marshall v. First American National Bank of Nashville,* 91 Ill.App.2d 47, for the proposition that the opinion of an expert witness should constitute a definite and reasonably certain opinion of the witness and not mere conjecture, probability or speculation. This is a correct statement of law. However, we cannot agree with plaintiff's contention that this witness's testimony was speculation. In the *Marshall* case, there was no factual basis for the opinion of the experts. Here there were facts in evidence upon which he could base an opinion in regard to the effect of taping a stick to the standards. The plaintiff himself had introduced evidence that because the boys could not jump as high as the lowest steel peg for holding the crossbar on the standard, wooden pegs

were taped to the bottom portions of the standards to hold the crossbar in a lower position. In fact, after giving his initial testimony, plaintiff's witness, Hammond, was recalled during the plaintiff's case and permitted to give an opinion, over objections by counsel for the manufacturer, with respect to the effect on the stability of the standards of a piece of wood taped to the standards. Thereafter, on cross-examination on the subject, the witness volunteered an opinion with respect to the performance, effect and stability of a wood piece taped on the standard. We find no error in the admission of this testimony.

Plaintiff also contends that the court erred in refusing plaintiff's tendered instruction No. 11, which reads as follows:

"You are instructed that the manufacturer of a product who sells such a product in an unreasonably dangerous condition is liable for any physical harm caused thereby to the user. This rule applies even though the user has not purchased the product directly from the manufacturer."

At the instruction conference the defendant Harry Gill Company objected to this instruction on the ground that it instructed the jury that this defendant could be liable for harm caused by its product without advising the jury that physical harm must be proximately caused by an unreasonably dangerous condition of the product. Similar objection was made to plaintiff's tendered instruction No. 9 and plaintiff's attorney modified that instruction to include "proximate cause". The plaintiff's attorney had an opportunity to modify instruction No. 11 in a similar manner to state the correct principle of law, but he did not so modify it and accordingly the tendered instruction was denied. Obviously, it is not enough that a manufacturer merely sell an unreasonably dangerous product. That product must *proximately* cause the injury to the plaintiff. The objection to the instruction as tendered was properly allowed and, upon refusal of the plaintiff to so modify said instruction, the instruction was properly refused. We find no error in the court's refusing the plaintiff's tendered instruction No. 11.

Plaintiff urges several other grounds for reversal which we do not find necessary to discuss in this opinion.

Plaintiff also contends that the verdict in favor of the school district was against the manifest weight of the evidence. Plaintiff contends that three facts when considered together demonstrate the negligence of the school district. The facts introduced by plaintiff are (1) the school through its agents taped wooden pegs to the standards, (2) the standards were set on rough, unlevel, cracked and weathered concrete blocks, and (3) the school did not place anyone next to the standards to prevent them from toppling. Although plaintiff claims that these facts are uncon-

tradicted, there is a great deal of conflicting testimony on the first two points. Plaintiff himself stated in his reply brief that "* * * the testimony in regard to whether or not wooden pegs were taped to the standards is far from conclusive in that some of the witnesses testified that they did not see any pegs taped to the standards at the time the plaintiff made his vault, while other witnesses testified that there were pegs taped to the standards." The school also introduced testimony that the standards were set on a stable foundation. It is obvious then that the three allegedly "uncontradicted" facts upon which the plaintiff relies for a reversal of the jury verdict are not really uncontradicted at all. In addition, the school introduced sufficient testimony relating to supervision of the activities from which the jury could have found the school not negligent. We observe that the testimony of all the occurrence witnesses as to a factual situation which occurred ten years prior to the trial was extremely conflicting on a number of points. Testimony conflicted as to whether the standards were wobbly; whether additional wooden pegs had been taped to the standards; whether tape had been placed on the steel pegs; whether the plaintiff cleared or hit the crossbar; whether plaintiff "rode the pole through" or released the pole; whether the pole hit the crossbar and/or the standard; whether the pole hit the right or left standard; and whether the standard fell as the result of a wobbly base or as the result of being hit by the pole or as the result of the crossbar catching on a taped peg and pulling the standard down. In *Ney v. Yellow Cab Co.*, 2 Ill.2d 74, 117 N.E.2d 74, our supreme court stated:

> "Questions of negligence, due care and proximate causes are ordinarily questions of fact for a jury to decide. The right of trial by jury is recognized in the Magna Charta, our Declaration of Independence and both our State and Federal constitutions. It is a fundamental right in our democratic judicial system. Questions which are composed of such qualities sufficient to cause reasonable men to arrive at different results should never be determined as matters of law. The debatable quality of issues such as negligence and proximate cause, the fact that fair-minded men might reach different conclusions, emphasize the appropriateness and necessity of leaving such questions to a fact-finding body. The jury is the tribunal under our legal system to decide that type of issue. To withdraw such questions from the jury is to usurp its function." 2 Ill.2d at 84.

In the present case it was for the jury, the fact-finding body, to weigh the contradictory evidence and inferences, judge the credibility of the witnesses, and draw the ultimate conclusion as to the facts. We are not free to re-weigh the evidence and set aside the jury verdict merely be-

cause the jury could have drawn different inferences and conclusions from the facts. We are unable to state that the verdict of the jury in favor of the school district was against the manifest weight of the evidence.

Defendant school district filed an alternative cross-appeal in the event that this court should reverse the judgment of the trial court and remand the case for a new trial. Because we affirm the judgment below, it is not necessary for us to discuss the cross-appeal.

For the foregoing reasons, we affirm the judgment of the trial court.

Judgment affirmed.

EBERSPACHER, P. J., and CREBS, J., concur.