CARL MOULTON, Plaintiff-Appellant, *v.* SHELL OIL COMPANY *et al.*, Defendants-Appellees.

Fifth District No. 74-395

Opinion filed May 18, 1976.

C. William Fechtig, of Fechtig & Sutton, of Carmi, and Paul L. Pratt, of Pratt, Kardis, Pierce & Bradford, Ltd., of East Alton, for appellant.

James H. Bandy, of Listeman, Bandy & Hamilton, of Belleville, for appellee Shell Oil Company.

Hoagland, Maucker, Bernard & Almeter, of Alton (Robert B. Maucker, of counsel), for appellee Wegman Electric Company.

Mr. JUSTICE JONES delivered the opinion of the court:

Plaintiff, Carl Moulton, filed a three-count personal injury action against two defendants, Shell Oil Co. and Wegman Electric Co. Count I was against defendant Shell based on a violation of the Illinois Structural Work Act (Ill. Rev. Stat. 1971, ch. 48, par. 60 *et seq.*). Counts II and III were against defendant Wegman, Count II alleging negligence in providing an unsafe place to work and Count III a violation of the Illinois Structural Work Act. The jury returned a verdict against plaintiff and in favor of all defendants and judgment was entered on the verdict. Plaintiff filed a post-trial motion for a new trial alleging that the verdict was against the law and the manifest weight of the evidence. The motion was denied and plaintiff appeals.

The factual situation from which the suit arose is as follows. In 1965,

defendant Shell Oil Co. contracted with Arthur G. McKee and Co., a firm specializing in the construction of steel plants, oil refineries and chemical works, to build a hydrocracker and hydrogen unit at Shell's Wood River refinery. During construction Shell maintained a manager of construction and a staff of Shell inspectors to see that the workmanship and materials used were in accordance with the plans and specifications, but Shell employees did none of the actual labor or construction work. McKee was the prime contractor and subcontracted parts of the work. Electrical installations were subcontracted to defendant Wegman Electric Co.

Plaintiff, a 54-year-old pipefitter with 23 years experience, was employed by McKee as a pipefitter at the Wood River construction site. He was injured on February 11, 1969, during the course of his work. On that day plaintiff was working in the "pipe alley," an area in which pipes were hung in tiers, one above the other. Plaintiff was standing on the first tier of pipe hauling up planks with a rope to use in building a scaffold to reach the second tier where welding was to be done. He was supporting himself with one foot on a pipe and one foot on the edge of an electrical cable tray which had been installed by Wegman some 15 months prior. The entire "pipe alley," including the cable tray, had been in the open and exposed to the weather for over a year, due in part to a year's work stoppage on the construction site.

The cable tray resembled a ladder laid horizontally from beam to beam with electrical cables laid on top of the rungs. The ladder type frame work or inner supporting structure of the tray was made of hot-dipped galvanized steel and the cross-rungs were capable of supporting the full cable load plus a 200-pound man standing in the center of an individual rung. At the time of the incident the cable tray had no top, although it was enclosed later, and the sides were covered with an insulating material called maronite, seven-eights of an inch thick. The maronite, being exposed to the elements had begun to weather and had been painted in an effort to preserve it. The tray, including the maronite insulation, had been supplied by McKee to Wegman who then installed it.

Plaintiff was supporting himself with one foot on the edge of the cable tray when the maronite crumbled causing him to lose his balance. He fell backward onto an exposed bolt which was sticking up about 5 inches above the tray causing a deep laceration of the scrotum and perineum. He was hospitalized for approximately 18 days. In early 1972 he was again hospitalized and operated on for a back injury which he contends he suffered at the same time. Plaintiff asserts that due to the first described injury he is unable to achieve an erection or have sexual intercourse and is in fact, completely impotent.

Plaintiff, in this appeal, states the issues to be, (1) did the defendants have charge of the work within the meaning of the Illinois Structural

Work Act and (2) was the trial court correct in denying plaintiff's post trial motion for a new trial.

As to the first issue, it could be said, under one view of the facts, that plaintiff has waived review of this question on appeal by failing to include it as grounds in his motion for a new trial. (Supreme Court Rule 366(b)(2)(iii), Ill. Rev. Stat. 1975, ch. 110A, par. 366(b)(2)(iii); *Turner v. Boston*, 10 Ill. App. 3d 453, 294 N.E.2d 102; *Danielson v. Elgin Salvage & Supply Co.*, 4 Ill. App. 3d 445, 280 N.E.2d 778.) However, plaintiff argues that, as a matter of law, the defendants had "charge of the work" within the meaning of the Illinois Structural Work Act and his motion for a new trial did include the allegation that the "verdict was against the law."

■■ Though we consider the argument tenuous we will nevertheless consider it. After examining the case law on this question we are unable to say that the law in Illinois is so clearly settled that, as a matter of law, the evidence presented established that the defendants were in "charge of the work" within the meaning of the Illinois Structural Work Act. (See *Voss v. Kingdon & Naven, Inc.*, 60 Ill. 2d 520, 328 N.E.2d 297; *Larson v. Commonwealth Edison Co.*, 33 Ill. 2d 316, 211 N.E.2d 247; *Gannon v. Chicago, Milwaukee, St. Paul & Pacific Ry. Co.*, 22 Ill. 2d 305, 175 N.E.2d 785; *Kennerly v. Shell Oil Co.*, 13 Ill. 2d 431, 150 N.E.2d 134.) Whether Shell or Wegman were in "charge of the work" was a question of fact for the jury to decide. *Schultz v. Ericsson Co.*, 264 Ill. 156, 106 N.E. 236; *Mundt v. Ragnar Benson, Inc.*, 18 Ill. App. 3d 758, 310 N.E.2d 633; *Vykruta v. Thomas Hoist Co.*, 75 Ill. App. 2d 291, 221 N.E.2d 99; *Oldham v. Kubinski*, 37 Ill. App. 2d 65, 185 N.E.2d 270; *Braden v. Shell Oil Co.*, 24 Ill. App. 2d 252, 164 N.E.2d 235.

The jury returned a general verdict indicating that they found for the defendants and against the plaintiff. The jury found, then, that the defendants either were not in charge of the work, or if they were that they had not violated the Structural Work Act, or that defendants were neither in charge of the work nor violated the Structural Work Act. These choices were for the jury which found in favor of both defendants and we will not set that finding aside.

The plaintiff's second issue was stated to be, "was the trial court correct in denying plaintiff's post trial motion for a new trial," and "was the verdict of the jury against the manifest weight of the evidence." Plaintiff asks this court to award a new trial on the basis that the verdict of the jury was against the manifest weight of the evidence when the trial court refused a new trial because the verdict was not against the preponderance or greater weight of the evidence.

Language used in *Read v. Cummings*, 324 Ill. App. 607, 59 N.E.2d 325, aptly expresses the difference in the duty of the trial judge and that of the reviewing court which plaintiff has not recognized.

"It is then the duty of the trial judge to consider the weight of the evidence and if he is of opinion that plaintiff has not proven his case by a preponderance of the evidence, taking into consideration the fact that the jury has found otherwise, it is his duty to set aside the verdict and grant a new trial. And if the court does not do so but overrules the motion and enters judgment and the case is then brought to this court, we are not authorized to disturb the verdict on this ground unless the verdict and judgment are against the manifest weight of the evidence. * * * It requires much more for this court to set aside a verdict and judgment than is required of the trial judge. It is his duty to set aside the verdict if he is of opinion that the plaintiff has not sustained his case by a preponderance of the evidence, while the question of the preponderance of the evidence does not arise at all in this court." 324 Ill. App. 607, 609-610, 59 N.E.2d 325, 326.

The applicable standards have been more recently stated in *Stringer v. McHugh*, 31 Ill. App. 3d 720, 722-23, 334 N.E.2d 311, 312-13, " * * * the jury's verdict should not be disturbed by the trial court unless it is 'unreasonable, arbitrary, and unsupported by the evidence.' * * * Neither the trial judge nor the reviewing court should sit as a second jury to consider the nuances of the evidence or the demeanor and credibility of the witnesses."

■■ Employment of either standard in the instant case would not justify vacation of the judgment. The evidence was in conflict on each of the issues essential to a resolution of the case. Twenty persons testified. There was testimony relating to what degree of control, if any, Shell and Wegman had over the work, and the contract between Shell and McKee was read to the jury. There was conflicting testimony as to the condition of the maronite, whether or not it had been painted, by whom, and whether the painting rendered it unrecognizable as maronite, and as to the use of maronite in the industry. There was also conflicting testimony as to whether it was or was not the practice in the industry to flag, stencil or otherwise label structures which were not safe to walk upon. There was conflicting testimony as to whether it was an industry practice to either break off or cover in some manner exposed bolts. There was medical evidence which contradicted plaintiff's testimony as to whether his alleged impotency was caused by the work injury, whether he had sustained any permanent injury and whether his later operation on the lower back was a result of the work injury.

As the court said in *Bouillon v. Harry Gill Co.*, 15 Ill. App. 3d 45, 301 N.E.2d 627:

"'[I]t was for the jury, the fact-finding body, to weigh the contradictory evidence and inferences, judge the credibility of the

witnesses, and draw the ultimate conclusion as to the facts. We are not free to re-weigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences and conclusions from the facts." 15 Ill. App. 3d 45, 50-51.

We are unable to say in the instant case that the verdict of the jury was against the manifest weight of the evidence.

Judgment of the circuit court is affirmed.

Affirmed.

KARNS, P. J., and EBERSPACHER, J., concur.