RONALD LEE KIRBACH, Plaintiff-Appellant, *v.* COMMONWEALTH EDISON COMPANY, Defendant-Appellee.

Fifth District  No. 75-436

Opinion filed July 23, 1976.

C. William Fechtig, of Fechtig & Sutton, of Carmi, and John T. Pierce, Jr., of Pratt, Kardis, Pierce & Bradford, Ltd., of East Alton, for appellant.

Edward J. Kionka, of Columbia, and Gordon R. Broom, of Burroughs, Simpson, Wilson, Helper & Broom, of Edwardsville, for appellee.

Mr. PRESIDING JUSTICE KARNS delivered the opinion of the court:

Plaintiff-appellant, Ronald Lee Kirbach, appeals from a judgment of the Circuit Court of Madison County entered upon a jury verdict in favor of defendant-appellee Commonwealth Edison Company.

Plaintiff, an employee of Babcock and Wilcox Company, a general construction contractor engaged by defendant, filed a complaint in two counts, one alleging violation of the Illinois Structural Work Act (Ill. Rev. Stat. 1975, ch. 48, par. 60 *et seq.*), and one alleging negligence on the part of the defendant. The suit arose from an injury allegedly sustained by plaintiff when he fell from a ladder while working inside a boiler apparatus owned by the defendant.

Plaintiff argues on this appeal that defendant was liable under the Structural Work Act as a matter of law because the contract with Babcock and Wilcox Company provided in effect that defendant was in charge of the work; that the court erred in refusing to give plaintiff's tendered instruction that liability under the Structural Work Act could attach if defendant had "charge of, or the right to be in charge of" the structural work; that the court erred in refusing to permit plaintiff to demonstrate that Babcock and Wilcox Company had an indemnity contract with

defendant and was thus the real party in interest; and that the verdict was contrary to the manifest weight of the evidence.

Defendant operates an electricity generating plant near Kincaid, Illinois, where several boilers are used to produce electricity by the use of steam. Adjacent to each boiler are "cyclones," circular arrangements of tubing which provide heat to the water in the boiler to precipitate the production of steam. Slag builds up on the surface of the tubes and periodically must be removed by using pneumatic hammers and chisels. The cyclones are approximately 10 feet high and 13 feet long, and the men removing the slag are unable to reach the entire surface area of the cyclone without the use of scaffolds. When he fell, plaintiff was on a wooden ladder that had no protective shoes on the bottom. The bottom surface of the cyclone is not flat but is a configuration of tubing which constitutes part of the circular structure of the cyclone.

Under the contract between defendant and Babcock and Wilcox Company, defendant had the power to inspect all work and have it done again if not satisfactory; to order work stopped if done in an unsafe or improper manner; to have any employee removed whom defendant felt to be unfit or incompetent; to disapprove any subcontractor; and to require the removal of any employee of any subcontractor.

The testimony showed that while defendant's employees did periodically "look in" on the work being done, there was no detailed inspection. If defendant's employees had a complaint about the work, they would go to defendant's maintenance engineer or master mechanic who in turn would talk to the erector, Babcock and Wilcox' chief man on the job. The erector would consult the general foreman who would talk to the crew foreman who would in turn see that the work was then properly performed. The testimony of defendant's superintendents and engineers was that they would not allow Commonwealth Edison employees to use ladders inside the cyclone, as it was unlikely that the configuration of the cyclone would provide a steady base for the ladder. Instead it was defendant's practice to erect wooden or aluminum scaffolding inside the cyclone on which the men could stand. In any event no ladders without protective shoes would be used.

Plaintiff and another workman testified that ladders and scaffolding were used inside the cyclones and that they did not consider the use of ladders to be unsafe, even when not equipped with safety shoes or nonslip devices. Plaintiff testified that a ladder was necessary to do part of the work and was more convenient than scaffolding. There was scaffolding present in the cyclone when plaintiff was injured, and there was evidence that this scaffolding was sufficient to perform the work. There was also evidence that the ladder in question was owned by

Babcock and Wilcox and had been modified by its employees by cutting off a part of a longer ladder.

■■ Plaintiff contends that as a matter of law defendant had the right to be in charge of the work and thus was in "charge of the work" creating liability under the Structural Work Act. (See *e.g., Larson v. Commonwealth Edison Co.,* 33 Ill. 2d 316, 211 N.E.2d 247 (1965).) But whether or not the contract provisions could be construed to give defendant the right to be in charge of the work, we cannot say as a matter of law that defendant was in "charge of the work." Whether defendant or Babcock and Wilcox was in charge of the work was a question for the jury to decide. (*Schultz v. Ericsson Co.,* 264 Ill. 156, 106 N.E. 236 (1914); *Mundt v. Ragnar Benson, Inc.,* 18 Ill. App. 3d 758, 310 N.E.2d 633 (1st Dist. 1974); *Moulton v. Shell Oil Co.,* 38 Ill. App. 3d 524, 347 N.E.2d 825 (5th Dist. 1976).) And even were we to accept plaintiff's contention, we could not say that defendant is liable as a matter of law under the Structural Work Act. The jury may well have believed that defendant did not fail to furnish a safe and suitable scaffold, or that the failure to furnish a proper scaffold was not the proximate cause of plaintiff's injury. In *Moulton,* the question before us was whether defendant Shell Oil Company or the contractor was in charge of the work. We stated, "[t]he jury returned a general verdict indicating that they found for the defendants and against the plaintiff. The jury found, then, that the defendants either were not in charge of the work, or if they were that they had not violated the Structural Work Act, or that defendants were neither in charge of the work nor violated the Structural Work Act. These choices were for the jury which found in favor of both defendants and we will not set that finding aside." We believe the same principle to be applicable here.

■■ Nor can we say that the verdict was against the manifest weight of the evidence. There were sufficient conflicts in the evidence for the jury to resolve that we cannot say that the verdict was "unreasonable, arbitrary and unsupported by the evidence." *Stringer v. McHugh,* 31 Ill. App. 3d 720, 722, 334 N.E.2d 311, 312 (5th Dist. 1975); *Moulton v. Shell Oil Co.*

■■ Plaintiff next contends that the court erred in refusing to modify IPI Nos. 180.01 and 180.02 by adding "or the right to be in charge of" the work as an alternative to having charge of the work. Two issues instructions and two non-IPI instructions containing this language were also refused. In *Larson v. Commonwealth Edison Co.,* 33 Ill. 2d 316, 211 N.E.2d 247 (1965), the court held to be error the modification of "having charge of" with the words "by retaining control and supervision of such work." The court held that "having charge of" is a phrase of common usage and meaning and should not be modified. This ruling has

been incorporated in IPI No. 180.16. It is plaintiff's position that the instant case is distinguishable from *Larson*. Plaintiff argues that his tendered instructions did not modify "having charge of" but were intended to inform the jury of an alternative to actual physical control to establish liability under the Structural Work Act. The cases cited by plaintiff certainly establish that the right to control the work may be sufficient to establish liability. (See *e.g., Voss v. Kingdon and Naven, Inc.*, 60 Ill. 2d 520, 328 N.E.2d 297 (1975); *Scrimager v. Cabot Corp.*, 23 Ill. App. 3d 193, 318 N.E.2d 521 (4th Dist. 1974); *Larson v. Commonwealth Edison*.) None of the cases cited, however, and none we have found, have gone so far as to approve the change in the basic Structural Work Act instructions here proposed. We do not believe, in the absence of direction from our Supreme Court or a change in the instructions as set forth in IPI and made binding upon the courts by Supreme Court Rule 239(a) (Ill. Rev. Stat. 1975, ch. 110A, par. 239(a)), that we should depart from the rule set forth in *Larson* and embodied in IPI No. 180.16.

Plaintiff finally contends that the court erred in refusing to allow him to show the bias of a defense witness, an employee of Babcock and Wilcox Company. Leon Urbane, an erector with Babcock and Wilcox, who had worked at the Kincaid, Illinois, plant, testified about the procedures used in the cyclones and the inspection performed by defendant. Prior to his testimony, plaintiff moved, *in camera*, to be allowed to bring out before the jury that Babcock and Wilcox was required by contract to indemnify defendant and had undertaken its defense through the insurance carrier of Babcock and Wilcox. Plaintiff argued that Urbane was biased because his employer was the real party in interest since Babcock and Wilcox would be liable to defendant for any judgment awarded. Plaintiff's motion was denied.

■■ The general rule in this State is that reference to the fact that a defendant is protected by insurance or some other indemnity agreement is improper and constitutes reversible error. (*Reed v. Johnson*, 55 Ill. App. 2d 67, 204 N.E.2d 136 (2d Dist. 1965); *Sweeney v. Max A.R. Matthews & Co.*, 46 Ill. 2d 64, 264 N.E.2d 170 (1970); *Marchlik v. Coronet Insurance Co.*, 40 Ill. 2d 327, 239 N.E.2d 799 (1968).) Exceptions have developed, however, which would allow introduction of the fact of insurance if it would bear materially upon the credibility of a witness or an impeaching statement. (See *e.g., Pinkerton v. Oak Park National Bank*, 16 Ill. App. 2d 91, 147 N.E.2d 390 (1st Dist. 1958); *Conover v. Smith*, 20 Ill. App. 3d 258, 314 N.E.2d 638 (3d Dist. 1974).) It is plaintiff's position in the instant case that since Babcock and Wilcox Company had agreed to indemnify defendant, Leon Urbane, an employee of Babcock and Wilcox Company, had an interest or bias in the case and that plaintiff should have been

allowed to explore it on cross-examination. If this were true, there may be some force to plaintiff's argument; however, in chambers he made it clear that defendant was being defended by Traveler's Insurance Company, Babcock and Wilcox' insurer, and this fact was to be made known to the jury; thus the real party in interest was the insurer with whom Urbane had no connection. We believe the rationale of the exception noted above is to be limited to cross-examination of those witnesses whose employers bear direct responsibility for payment of the judgment. To allow evidence of the agreement between defendant and Babcock and Wilcox might have intimated to the jury that Babcock and Wilcox was directly responsible for payment of a judgment against defendant rather than Traveler's Insurance Company. This result might have caused the jury to place too heavy a burden of credibility on Urbane's testimony. (See *Mangan v. Broderick & Bascom Rope Co.*, 351 F.2d 24 (7th Cir. 1965).) We believe the evidence was properly excluded.

For the foregoing reasons the judgment of the Circuit Court of Madison County is affirmed.

Affirmed.

EBERSPACHER and JONES, JJ., concur.