RICHARD D. ZUELSDORF, Plaintiff-Appellant, *v.* MONTGOMERY WARD &
CO., INC., Defendant and Third-Party Plaintiff-Appellant.—(CONTINENTAL
ELECTRICAL CONSTRUCTION COMPANY, Third-Party Defendant-
Appellee.)

First District (3rd Division)   No. 62590

Opinion filed September 13, 1978.

William J. Harte, Ltd., of Chicago, for appellant.

Baker & McKenzie, of Chicago (Francis D. Morrissey, Thomas F. Tobin, and J. Patrick Herald, of counsel), for appellee.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (Leonel I. Hatch, Jr., and Stanley J. Davidson, of counsel), for third-party appellant.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

The plaintiff, Richard D. Zuelsdorf, brought this action against Montgomery Ward & Company, Inc., seeking damages for injuries he received as a result of an alleged violation of the Structural Work Act. (Ill. Rev. Stat. 1969, ch. 48, pars. 60-69.) Wards in turn filed a third-party complaint against Continental Electric Company (hereinafter "C.E.C."), plaintiff's employer. Count I of the third-party complaint alleged that any negligence on the part of Wards was passive and that C.E.C. was guilty of active negligence. In Count II, Wards sought contractual indemnification from C.E.C. for all reasonable expenses incurred by Wards. The trial court dismissed count II prior to trial.

The actions were tried simultaneously. A jury returned a verdict in favor of Wards. As a result, no verdict was necessary with respect to Wards' third-party complaint. The trial court denied plaintiff's post-trial motions and entered judgment for Wards on the verdict. Plaintiff appeals. Wards has appealed from the order dismissing count II of its third-party complaint which sought indemnification against C.E.C. for expenses incurred in defending plaintiff's suit.

Plaintiff contends on appeal that the verdict was contrary to the manifest weight of the evidence; that the jury wrongfully considered plaintiff's and C.E.C.'s alleged acts of negligence when it returned a verdict for Wards, that the trial court erred in submitting a certain instruction to the jury; that the trial court erroneously excluded certain evidence; and that certain remarks of Wards' counsel during closing argument prejudiced plaintiff's right to a fair trial.

Plaintiff, an electrician, was injured in a fall from a ladder while working at a Wards' warehouse. Plaintiff's employer, C.E.C., was doing the electrical work for the installation of a closed circuit security system at the warehouse.

Henry Anderson, a field engineer for Wards, and Patrick O'Day, an estimator engineer for C.E.C., negotiated the contract under which C.E.C. was to do the work. Anderson had died prior to trial. Anderson gave O'Day a plan layout of the warehouse, but did not provide any plans or specification for the location of the lighting fixtures or conduits. O'Day prepared the electrical layout which was used by the C.E.C. electricians.

The contract executed by Wards and C.E.C. consisted of a Wards' standard form prepared by O'Day. The contract provided that C.E.C. was to furnish labor, material, and equipment to perform the electrical work. The contract was issued on a time and materials basis plus a percentage override on all labor and materials.

The contract in question contained the provisions that C.E.C. was to furnish labor, material and equipment required to perform the electrical work as directed by Anderson. Billings were to be submitted on a monthly basis in triplicate to Anderson. One copy of the contract was for Anderson's use; it contained a section in which he could record payouts. One copy containing billing instructions was kept by C.E.C. Wards' accounting and engineering departments also retained copies of the contract.

C.E.C. appointed Alex Tumbarello as job foreman. His responsibilities included the performance, supervision, and control of the electrical work. Tumbarello determined and arranged the work to be performed each day. He selected the work area and was responsible for obtaining the necessary equipment. He submitted daily time records to C.E.C. Anderson reviewed C.E.C.'s time records.

Prior to commencing the job, Tumbarello met O'Day at the warehouse and received instructions concerning the job. O'Day told him where the lights were to be installed and instructed him to run conduit wiring. Tumbarello told O'Day that the high ceilings would require the use of extension ladders. Tumbarello also recalled discussing the job with Anderson on the same day.

Tumbarello testified that during the course of the job he would discuss the work with Anderson sometimes once or twice a week and at times, not at all. Plaintiff knew Anderson as Wards' construction manager; he saw Anderson in the area once or twice a day, perhaps two or three times a week. Tumbarello testified that he once had a discussion with Anderson regarding a change in the location of a monitoring center. Tumbarello suggested the change to O'Day, who contacted Anderson. Tumbarello testified that Anderson's approval of such a change was necessary. He also testified that Anderson never complained about C.E.C. work. Anderson did not have the authority to discharge C.E.C. employees. Anderson was Tumbarello's sole contact with Wards, and no Wards' employee had anything to do with C.E.C.'s work. Anderson had no office at the warehouse. During the job, Tumbarello sometimes obtained material from Wards through one of Wards' maintenance men. Tumbarello repaid Wards for the materials obtained.

Wards gave security badges to the C.E.C. employees and the latter were informed that a Mr. Nelson was in charge of security. Nelson was often in the area of the C.E.C. jobsite.

Plaintiff, an electrician for 15 years, was assigned to work on the job with Tumbarello. A day or two before plaintiff's accident, Tumbarello took two aluminum extension ladders, belonging to Wards, from a section of the warehouse known as the "old claim area." That area contained damaged and unclaimed material. No Wards' employees told Tumbarello to use the ladders. Plaintiff had asked Tumbarello for a scaffold, but none was provided.

On the day of the accident, Tumbarello assigned plaintiff and another C.E.C. electrician, Bruner, to work together pulling wire. To perform the work, plaintiff and Bruner separated one of the two available aluminum ladders into two sections. Plaintiff worked from the upper section which had no rubber skids on the bottom. The rubber skids kept the ladder from slipping. Plaintiff knew that the ladder without rubber skids was likely to skid. Plaintiff placed the ladder on a beam which ran parallel to the inside wall. When plaintiff reached the top of the ladder, he went to place a can of lubricant on the beam. At this point, the bottom of the ladder slipped away from the wall, and plaintiff fell 16 feet to the ground. He sustained severe injuries, and did not return to work for approximately six months.

Marshall Peterson testified for plaintiff as an expert witness regarding ladders. He testified that use of the bottom section of the extension ladder alone or the use of the two sections as a unit would conform to the American National Safety Standard Institute's standards and to the Illinois Standards for Safety. The use of the upper section of the extension ladder, since it did not have rubber skids, would not conform to safety standards.

Plaintiff initially contends that the verdict in favor of Wards is against the manifest weight of the evidence. He argues that as a matter of law Wards was "in charge of" the work thereby creating liability under the Structural Work Act. Ill. Rev. Stat. 1969, ch. 48, pars. 60 and 69.

■■ The term "having charge of" is "* * * a generic term of broad import, and although it may include supervision and control, it is not confined to it. * * * '[I]ts meaning must be determined by the associations and circumstances surrounding its use. * * *'." (*Larson v. Commonwealth Edison Co.* (1965), 33 Ill. 2d 316, 321-22, 211 N.E.2d 247.) A defendant can only be held liable under the Act if the activities which plaintiff asserts establish defendant's having charge of the work are shown to be directly connected with the operations whereby plaintiff was injured. The term "direct connection" is one of common usage and understanding and whether persons may be held to have a "direct connection" with the work depends upon the circumstances of each case. (*Emberton v. State Farm Mutual Automobile Insurance Co.* (1978), 71 Ill. 2d 111, 373 N.E.2d 1348.) A proper consideration is whether defendant possessed the authority to stop the work whenever such a stoppage may

be necessary to insure the proper execution of the contract. *Miller v. Dewitt* (1967), 37 Ill. 2d 273, 226 N.E.2d 630.

In *Gannon v. Chicago, Milwaukee, St. Paul & Pacific Ry. Co.* (1961), 22 Ill. 2d 305, 175 N.E.2d 785, plaintiff suffered injuries when the ladder on which he was climbing slipped when it was placed on a patch of ice and slush on a concrete floor. The ladder had not been nailed to the scaffold in accordance with the custom of the trade. The court considered the issue of whether the defendant owner was in charge of the operation so as to come within the purview of the Act, and it held that the evidence revealed a disputed question of fact as to whether the owner was in charge and that it was within the province of the jury to make that determination.

■ In the present case, there existed a disputed issue of fact as to whether Wards was in charge of the operation and the jury's resolution of that issue was not contrary to the manifest weight of the evidence. The evidence from plaintiff's foreman revealed that Anderson, Wards' representative, did not direct or request any changes in the electrical work. He did not have a connection with the C.E.C.'s performance of the work, nor did he have the right to discharge C.E.C. employees. C.E.C. employees directed and supervised the work in question; selected the work and the work area; and were required to furnish the material to perform the work. The language in the contract requiring C.E.C. to furnish labor, material, and equipment as directed by Anderson did not as a matter of law render Wards in charge of the operation. It may have given Wards the right to be in charge, but whether Wards was in charge of the work was a question for the jury to decide. See *Kirbach v. Commonwealth Edison Co.* (1976), 40 Ill. App. 3d 587, 352 N.E.2d 468.

Plaintiff next argues that the jury wrongfully considered his and C.E.C.'s alleged acts of negligence in reaching its verdict in favor of Wards.

■ Of course, defenses of contributory negligence and assumption of risk are not available to a party charged with a violation of Structural Work Act. (*Huckabee v. Bell & Howell, Inc.* (1968), 102 Ill. App. 2d 429, 243 N.E.2d 317.) In the present case, however, plaintiff acknowledges that the jury was instructed that neither his nor his employer's conduct which might have contributed to the injury would be a defense to plaintiff's claim. Moreover, Wards' counsel during closing argument mentioned that plaintiff's conduct would not defeat his claim. As we have noted, the verdict of the jury was not against the manifest weight of the evidence. We cannot say that the jury considered plaintiff's contributory negligence in reaching that verdict.

Plaintiff also contends that the trial court committed reversible error in

giving the following jury instruction tendered by C.E.C. over plaintiff's objection.

"If you decide that plaintiff has proved all the propositions of his case, it is not a defense that something other than a violation of the Structural Work Act by the defendant may also have been a cause of the injury. However, if the sole proximate cause of injury to the plaintiff was something other than a violation of the Structural Work Act by the defendant, then your verdict should be for the defendant."

■■ ■ We believe that the trial court properly gave the foregoing instruction to the jury. As we have already stated, there was evidence presented that Wards was not in charge of the operation within the meaning of the Act. Consequently, the defense of sole proximate cause was properly before the jury. Moreover, instructions will be considered as a whole and where the jury has not been misled and the complaining party's rights have not been prejudiced by minor irregularities, those alleged errors cannot serve as a basis for reversal. (*McCormack v. Haan* (1961), 30 Ill. App. 2d 311, 174 N.E.2d 206.) The jury was thoroughly instructed on the Structural Work Act and as to what would constitute a violation of the Act. The law of the case was presented fairly, and the jury was not misled.

Plaintiff also argues that the trial court erred in excluding certain evidence. He first urges that it was error to exclude evidence of other contracts relating to work being performed by others at Wards.

■■ We believe that contracts relating to work other than that performed by C.E.C. in this operation were irrelevant to the issue of whether Wards was in charge of the present operation. The holding of the supreme court in *Larson v. Commonwealth Edison Co.* (1965), 33 Ill. 2d 316, 211 N.E.2d 247, appears to be dispositive of the issue. In that case, the court upheld the trial court's instruction which pertained only to the work being done by the contract-employer of the plaintiff. In so holding, the court stated at page 323:

" '[B]efore civil liability may be imposed * * * it must appear that he had charge of the construction operations involving the violation.' "

Plaintiff also urges that the trial court erred in not permitting him to introduce certain written safety standards. The expert witness offered by plaintiff testified in detail as to the custom, practice, and safety standards. After such testimony, the trial court refused to allow plaintiff's counsel to introduce into evidence a copy of the Illinois Industrial Commission rules and regulations.

■■ In *Getz v. Del E. Webb Corp.* (1976), 38 Ill. App. 3d 880, 888-89, 349 N.E.2d 682, this court upheld the trial court's exclusion of certain safety

standards. Using language pertinent to the present case, the court stated:

"Plaintiff was able to introduce extensive expert testimony on these standards which indicated they were merely codifications of common sense practices. In essence, they merely reflected the customs and practices of the construction industry. Moreover, these standards were not made part of any relevant contract. It is apparent that their admission would have constituted, at best, cumulative custom and practice evidence, and therefore it is our belief that plaintiff was not prejudiced by their exclusion."

Similarly in the present case, the expert witness had testified as to the customs and safety practices of the trade. The written standards would have been cumulative evidence, and plaintiff was not prejudiced by their exclusion.

■■ Plaintiff finally contends that certain comments by Wards' counsel during closing argument were improper and prejudiced plaintiff's right to a fair trial. The first such comment was that plaintiff's attorney was "playing games with us." Plaintiff made no objection to the remark at trial and has waived his right to claim error now. *Lindroth v. Walgreen Co.* (1950), 407 Ill. 121, 94 N.E.2d 847.

■■ He further argues that the following comments by Wards' counsel were improper:

"How are you going to be in charge of anyone that you don't have control over? How are you going to be in charge of some guy who you say to get off that ladder, you are doing it the wrong way. He may go call the union, I am doing it the way I want to. How are you going to be in charge of him? They are trying to make a big thing of it, well, they have got an engineering department downtown. That doesn't just apply to Montgomery Ward, it applies to you and I."

The trial court sustained plaintiff's objection to this statement. Plaintiff now argues that the trial court should have instructed the jury to disregard the statement, although plaintiff made no such request of the trial judge. The plaintiff's rights were adequately protected by the trial court since it sustained plaintiff's objection. Moreover, it is clear that any error in that statement by counsel was not serious and did not affect the outcome in the trial court, and we will not disturb the judgment. See *Both v. Nelson* (1964), 31 Ill. 2d 511, 202 N.E.2d 494.

Wards has also appealed from the order entered prior to trial dismissing count II of its third-party complaint. In that count Wards sought indemnification from C.E.C. based upon the indemnity clause contained in the contract executed by the parties. That indemnity clause provided as follows:

"As an inducement to the execution of this order and as a part

thereof, the contractor agrees to assume all liability for accidents to his men while employed on this work and agrees to indemnify, defend and save harmless MONTGOMERY WARD & CO., INCORPORATED, from all liability and expense for, or loss from, accidents to persons or property alleged to be caused by acts of omissions of his servants or employees while engaged on this work. The Contractor shall maintain such insurance as will protect the Contractors and WARDS from claims under Workmen's Compensation Acts and from claims for damage because of bodily injury, including death and property damage which may arise from and during operations under said Order, whether such operations be by the Contractor or by any subcontractor or anyone directly or indirectly employed by either of them.

\* \* \*

Certificates of such insurance shall be filed with WARDS. The Contractor shall be responsible for loss of or damage to tools and equipment furnished by the Contractor, or any other property owned by the Contractor, and used in work authorized by WARDS."

Wards alleged that it had complied with the provisions of its contract with C.E.C. and that under the contract C.E.C. was under a duty to indemnify, hold harmless and assume Wards' defense for any liability, cost or expense charged to Wards by reason of the allegations in plaintiff's complaint.

In *Tatar v. Maxon Construction Co.* (1973), 54 Ill. 2d 64, 294 N.E.2d 272, plaintiff sued a general contractor in charge of certain construction alleging that the contractor's negligence caused the injuries which he sustained. The general contractor filed a third-party complaint against plaintiff's employer alleging that the subcontractor in the parties' contract had undertaken to indemnify and hold harmless the general contractor against loss or expense incurred by reason of the charges in plaintiff's complaint. In upholding the dismissal of the third-party complaint, the court held that the contract between the parties did not clearly and unambiguously indemnify the general contractor against claims which were based on the general contractor's own negligence.

■■ In the present case, the contract between Wards and C.E.C. only provides for indemnification for injuries resulting from acts or omissions of C.E.C. An indemnifying contract will not be construed as indemnifying one against his own negligence unless such is specifically included in the agreement between the parties and the language employed is clear and unambiguous. (*Zadak v. Cannon* (1974), 59 Ill. 2d 118, 319 N.E.2d 469.) Wards was not entitled to indemnity, and the trial court correctly dismissed count II of Wards' third-party complaint.

For the foregoing reasons, the judgment of the circuit court of Cook County in favor of Montgomery Ward & Co. and against plaintiff is affirmed. The judgment dismissing count II of Wards' third-party complaint is also affirmed.

Judgments affirmed.

SIMON and McGILLICUDDY, JJ., concur.