### KRAEMER v BATES MOTOR TRANSPORT LINES, Inc. et

Ohio Appeals, 1st Dist, Hamilton Co

No 5192. Decided March 8, 1937

Wm. C. Meyer, Cincinnati and Wm. F. Schubert, Cincinnati, for appellee.

Henry E. Beebe, Cincinnati and Robert A. Black, Cincinnati, for appellant, Bates Motor Transport Lines, Inc.

## OPINION

By ROSS, PJ.

Appeal on questions of law from the Court of Common Pleas of Hamilton County.

The action was instituted by Kraemer to recover from Allen W. Appel and the Bates Motor Transport Lines damages predicated upon injuries received by Krae-

mer when a truck operated by him crashed into another truck on a highway in the State of Indiana. It was alleged in the petition that the collision occurred because the brakes upon the truck operated by Kraemer were defective, and known to be so by Appel, who was in control of the truck under the direction of the Transport Company, and that Kraemer was ordered and directed to operate the truck after attention of his employers was called to the defective condition of the truck.

Both Appel and the Transport Company filed general denials. The court dismissed Appel from the case apparently upon the theory that he was the agent of the Transport Company. Our conclusion upon the evidence later herein expressed causes us to conclude that this action did not constitute error, prejudicial to the Transport Company. Kraemer has prosecuted no appeal.

The jury rendered a verdict in favor of Kraemer against the Transport Company.

The Transport Company was engaged in the business of interstate transportation of freight by truck. Appel was what is known as a contract hauler, and had a written contract with the Transport Company covering the use and operation of the truck, operated by Kraemer. In this contract the truck was specifically described by numbers and make. The Transport Company furnished the gasoline and oil, the value of same to be charged against the contract compensation of Appel, which was based upon a percentage basis. The Transport Company agreed to furnish day and night service for the truck at its Chicago terminal, where the truck was to be stored when in Cook County and not in use, and it was provided that the truck should be brought in for daily inspection except when absent from Cook County, Illinois. No charge was made by the Company for such inspection. All expenses incident to greasing, washing, oiling and gasing the truck, as well as other operating expenses were charged to Appel. It was further agreed that all services and repairs desired by Appel on the truck should be furnished by the Company, to be paid for by Appel. The truck was required to be kept in a state of efficiency satisfactory to the company, "and shall be operated in such a manner as to reasonably maintain the standard of efficiency and service which the corporation renders directly to its own patrons. The contractor (Appel) agrees that all claims by third persons, all complaints of patrons, and all negotiations which may arise regarding the mainten-

ance and operation of said truck during the term of this contract will be referred to the corporation for its attention." The truck was required to be operated under the name of the corporation, in compliance with a uniform design, designated by the Transport Company. Appel was required to maintain all forms of insurance incident to the operation of the truck, including that of Workmen's Compensation, to pay all licenses and taxes, and union fees. The Company was given the exclusive use of the truck. The relationship of the parties was declared to be that of independent contractors.

The contract provided further:

"**It is agreed that all current notices relating to the conduct of the business of the corporation with respect to routing, deliveries, repairs, and operations posted at any terimnal of the corporation and generally directed to all trucks similarly under contract with the corporation shall be binding upon the contractor (Appel) from time to time as the same may be posted.**" (Emphasis and parenthesis ours).

An insurance policy was admitted in evidence containing the following provisions:
"Add the following stipulation:
"Truck owners shall be considered employees while driving their trucks in the service of this insured, and this policy shall be construed to cover accidents to such truck owners and their employees arising out of this employment, in, consideration of which it is agreed that one-third of the gross amounts paid by this insured to such truck owners shall be included as a part of the payroll on which the premium for this policy is to be based."
"Individual————————
"Partnership ——————
"Corporation X
"Employer Bates Motor Transport Lines, Inc.
"Address (St. & No.) 3812-28 Normal Blvd.
"Post Office, Chicago.
"(County) Cook, (State) Illinois.
"Period of Policy Jan. 5, 1934, 12:01 A. M. to Jan. 5, 1935, at 12:01 A. M. Standard time as to each date at the Employer's address stated herein.
"Locations & Classifications of Operations, States of Illinois, Indiana and Kentucky and Elsewhere. as Business Requires.
"Illinois
"Code No. 7219—Truckmen including drivers, Chauffeurs and their helpers, Stable-

men, Garagemen, Blacksmiths, Repairmen and Riggers Excluding only Storage Warehouse Employees, Clerical Office or Salesmen, Estimated annual payroll, 24,000; Rate per $100 of payroll 5.13; Estimated annual premium 1231.20.
"Code No. 8610—Clerical Office Employees (Including President, Vice Pres. and Sec'y. Treas.) Estimated annual payroll 14,000; Rate per $100 of payroll .09; Estimated annual premium, 12.60.
"Code No. 8742—Salesmen, Collectors and Messengers, Estimated annual payroll, 6,000; Rate per $100 of payroll .35; Estimated annual premium 21.00.
"200 Duck St., Fort Wayne, Indiana and 300 W. New York St., Indianapolis, Indiana. Code. No. 7219—Truckmen, N.O.C. Including Drivers, Chauffeurs and their Helpers, Stablemen, Garagemen, Blacksmiths, Repairmen, and Riggers, But Excluding Only Storage Warehouse Employees, Clerical Office or Salesmen, Estimated annual payroll, If Any; Rate per $100 6.36; Estimated annual premium . . . . . . .
"Code No. 8810—Clerical Office Employees, If any; .07; Estimated annual premium; If Any; Rate per $100 .07; Estimated annual premium . . . . . . ."

This was admitted for the purpose of showing agency only, and we have previously approved similar exhibits for a like purpose. **Cushman Motor Delivery Co. v Smith, Admr., 51 Oh Ap 421, (20 Abs 99).**

The judgment against the Transport Company can be sustained if it is made to appear in the evidence that the Transport Company owed a duty to Kraemer to furnish him with safe equipment, that it failed in this duty, and that the injuries he suffered were due to such failure.

Without reviewing the evidence at length, there is sufficient to sustain the conclusion that Appel was the agent of the Transport Company for this purpose, if no other, and that the Company and its agent failed to perform this duty, and in doing so violated the right of Kraemer, the employe, to have safe equipment furnished which he was ordered and directed to operate by the Transport Company. It is also evident that the injuries suffered by Kraemer were occasioned by the defective brakes.

The appellant contends the court erred in not construing the contract and insurance policy when submitting these to the jury. The plaintiff claimed that Kraemer was an employe or servant of the Trans-

port Company, that Appel was an agent of the Transport Company, and that it was the duty of the Transport Company to furnish the employes with safe equipment, that the Company, through its agent had failed in this duty. The court submitted the contract and insurance policies to the jury, not as instruments fixing the relative rights between the parties, but as admissions on the part of the Company of the existence of the relationship of master and servant between Kraemer and the Company, and that of agency between the Company and Appel. The expressions of this court of its opinion in the Cushman case, supra, is still the conclusion of the court upon the admissibility of such evidence. This not being a contest between Appel and the Company, the question of the construction of the contract and policy is not pertinent or required. It was for the jury to weigh the value of the admissions contained in the instruments in question.

In the former inquisition, the question presented involves the intention of the parties. In the present use of these instruments, the matter is not so much a question of intention as admission. One may admit a relationship he does not intend to recognize. It is for the jury to say whether or not having admitted the relationship of master and servant in an instrument, foreign to the issues involved in the instant proceeding, that the fact of such relationship of master and servant has been proved

We consider this statement disposes of the authorities cited by the appellant.

It is the contention of the appellant that the evidence shows that Kraemer was the servant of Appel alone, who was an independent contractor as to the Transport Company. Of course the mere statement that Appel is such in the contract does not make him so. In **Mabley & Carew Co. v Borden, 129 Oh St 375**, a contracting party stated that a binding contract was voluntary and gratuitous. It was held that such language was ineffective to destroy the liability of the contractor expressed elsewhere in the instrument.

The question involved in cases dealing with the defense of independent contractor is largely one of the existence of the right to control. **Meyer Plost v Avondale Motor Car Co., 4 Ohio Opinions 475, (20 Abs 289)**. That the right to control and direct Kraemer was specifically reserved can not be denied in view of the language of the

contract heretofore noted. It is our conclusion that there is ample evidence to show that Kraemer was the employe of the Transport Company, that he was under the direction and control of its officer, agents, and employes, that the truck was part of the equipment under its control, and that it was responsible for the condition thereof, that Appel was agent for the Transport Company, that there was a failure to maintain the truck in such a condition that it would be safe to operate same, that although the Company through its agents, and employes knew of such defect, it ordered and directed Kraemer to proceed to use the same, and that it is, therefore, directly responsible for the injuries suffered by Kraemer when the truck in an emergency failed to respond as it should have done and could not owing to defective brakes.

The judgment is affirmed.

HAMILTON and MATTHEWS, JJ, concur.