COSTELL, Appellant,

v.

**TOLEDO HOSPITAL et al., Appellees.**

[Cite as *Costell v. Toledo Hosp.* (1992), 82 Ohio App.3d 393.]

Court of Appeals of Ohio,
Lucas County.

No. L–91–125.

Decided Sept. 25, 1992.

394

*E.J. Leizerman,* for appellant.

*James R. Jeffery,* for appellees Harold R. Stevens, M.D. and Katchka, Friedman & Crider Medical Corp.

*Rudolph A. Peckinpaugh, Jr.,* for appellee Toledo Hospital.

*Robert C. Maynard,* for appellees Robert P. Van Bergen, M.D. and McAlpine, Foster, Montesinos & Van Bergen, Inc.

---

SHERCK, Judge.

This is an appeal from a judgment on a jury verdict issued by the Lucas County Court of Common Pleas. Following coronary arterial surgery, appellant's decedent suffered brain damage and subsequently died. Appellant brought suit, alleging that her decedent's death was the result of the negligence of the treating physicians and the hospital wherein the surgery was performed. A jury, however, found against appellant's claim. Because we find the trial court prejudicially erred in limiting the scope of appellant's impeachment of appellees' witnesses, we reverse its judgment.

Appellant is Frances Costell, individually and as administrator of the estate of her late husband, Donald Costell. Donald Costell died without re-gaining consciousness following open heart surgery performed at appellee Toledo Hospital by appellees Dr. Robert P. Van Bergen, M.D. and Dr. Harold R. Stevens, M.D.[1]

Except for events which occurred during a three-to-six minute time frame, the facts of this case are undisputed. On May 12, 1982, appellant's decedent underwent coronary bypass surgery at Toledo Hospital. Appellee Dr. Van

---

1. Also originally named defendants and present appellees are Dr. Van Bergen's and Dr. Steven's Medical Corporations; Katchka, Friedman & Crider, Inc. and McAlpine, Foster, Montesinos and Van Bergen, Inc., respectively.

Bergen performed the surgery. Appellee Dr. Stevens was the anesthesiologist. By all accounts the surgery, though lengthy, was routine.

The events which give rise to the underlying claim occurred after completion of the surgery when appellant's decedent was being transferred from the operating table onto a Cardiac Intensive Care Unit ("CICU") bed for transfer to the CICU. This is also the time span wherein the factual dispute takes place. Richard Osterhout, an operating room technician, testified that as Costell was being transferred to the CICU bed, his heart monitor showed a "flat line pattern," indicating an arrest of the heart. Osterhout announced his observation of the flat line pattern to the others in the operating room; when the announcement was made, a number of activities occurred. Osterhout himself began to check for monitor malfunction. According to the testimony of others in the operating room, Dr. Stevens checked the patient for a carotid pulse and began chest compressions. One of the surgery nurses left the operating room to summon Dr. Van Bergen, who had already left the area. Dr. Stevens and a resident anesthesiologist continued cardiopulmonary resuscitation ("CPR") for a brief time until Dr. Van Bergen returned. By the time Dr. Van Bergen returned, Costell's heart monitor showed a pattern indicating ventricular fibrillation. Dr. Van Bergen twice attempted defibrillation through the administration of electric shock, but this was unsuccessful. The patient was then returned to the operating table, where his chest incision was reopened and his heart restarted with a direct shock.

The apparent result of this incident was irreversible brain damage induced by a lack of blood to the brain during the time Costell's heart was not operating. Costell died five months later as the result of a coronary arrest; during that period, he remained in a "vegetative" state.

On October 1, 1983, appellant filed a wrongful death action alleging that her decedent's death was the result of the medical negligence of appellees. She dismissed the first complaint pursuant to Civ.R. 41(A)(1) on August 14, 1985, and refiled the claim on December 31, 1985.

The second complaint included an additional claim alleging that appellees had coerced and orchestrated the testimony of present and former employees of the Toledo Hospital resulting in "testimony and facts being suppressed, altered, distorted and/or misrepresented." This constituted a *"prima facie tort,"* according to the complaint. The trial court dismissed the *prima facie* tort claim pursuant to Civ.R. 12(B)(6), and this court affirmed as did the Ohio Supreme Court. *Costell v. Toledo Hosp.* (Jan. 16, 1987), Lucas App. No. L–86–196, unreported, 1987 WL 5487, reversed on other grounds in *Costell v. Toledo Hosp.* (1988), 38 Ohio St.3d 221, 223, 527 N.E.2d 858, 859.

The "*prima facie* tort" issue arose as the result of Beth Mattison Lashaway's recantation of an original statement that she had made. Beth Mattison Lashaway was a CICU nurse. Lashaway originally stated that on the day of Costell's surgery she was in the monitor room which adjoined the operating suite. According to Lashaway, from this vantage point she could look through a large window and observe activities in the operating room. Lashaway said she watched as the operating room personnel transferred Costell from the operating table to the CICU bed. As this was taking place, Lashaway said, she saw the patient's heart monitor exhibit a flat line pattern and observed that activity in the operating room became "chaotic." Lashaway characterized those in the operating room as appearing "upset." According to Lashaway, she observed the activity in the operating room for approximately three minutes before she left the monitor room to summon Dr. Van Bergen. During this time, Lashaway reported, no one in the operating room initiated CPR procedures on the patient. At trial, there was unanimity among medical experts that a three-minute delay in administering CPR under these circumstances, if it occurred, would constitute medical negligence.

Following Lashaway's initial statement, she recanted her allegations. Lashaway later stated that this recantation was due to pressure from Toledo Hospital's then-risk manager, Len Bitner, who allegedly threatened her with the loss of her job unless she changed her story.

On remand from the Ohio Supreme Court, the case went to arbitration, where a unanimous decision was rendered in favor of appellees. Appellant's complaint was amended pursuant to R.C. 2711.21(C) and a trial *de novo* was held before a jury beginning on March 4, 1991.

At trial, appellant called Beth Lashaway, who testified to her observations from the monitor room of a three-minute delay in initiating CPR. Appellant then called respiratory therapist Richard Osterhout as a hostile witness. Osterhout testified that he could not recall when Dr. Stevens began CPR on the patient. Appellant then called David Southward, a respiratory therapist, who testified that Osterhout had come to him later in the day in an agitated state and told of a three-minute delay in administering CPR to appellant's decedent. This testimony was admitted for purposes of impeachment only.

Appellant then called, as its medical expert, Dr. Phillip Fyman. Dr. Fyman testified that a failure to begin CPR on a patient for three minutes after he exhibited indices of cardiac arrest was a departure from accepted medical practice. Additionally, Dr. Fyman testified that a surgeon who leaves the operating room before the patient has been removed departs from accepted medical practice. Dr. Fyman added that the hospital was negligent in failing

to institute a protocol requiring that a surgeon remain in the operating room until a patient is removed.

Appellees called appellee Dr. Stevens, who denied Beth Lashaway's report of a three-minute delay in administering CPR to the patient. An anesthesiological resident also participating in the surgery denied any delay occurred in administering CPR. Appellees also presented an array of medical experts who testified that the actions taken following Costell's arrest represented no departures from accepted medical practice, assuming Dr. Steven's account of the events was correct. All of appellees' experts did concede, however, that a delay of three minutes between the time of arrest and administering CPR would constitute medical negligence. Appellees' experts also unanimously denied that Dr. Van Bergen's departure from the operating room, or the failure of the hospital to have a rule requiring a surgeon to remain in the operating room until the patient is removed, demonstrated any departure from accepted medical practices.

Appellees also called Leonard Bitner, the former hospital risk manager accused by Beth Lashaway of coercing her to change her initial statement. Bitner denied any such coercion and testified that at the time of the incident he had investigated and found nothing improper. On cross-examination, appellant attempted to impeach Bitner by questioning him about his present employment with the medical malpractice insurance company that insured Dr. Van Bergen. The trial court sustained appellees' objection to this line of questioning.

On rebuttal, appellant called Michele Bristoll who, at the time of the surgery in question, was a CICU records clerk. Bristoll testified that she too was in the monitor room when Costell suffered his cardiac arrest. Bristoll confirmed Lashaway's testimony concerning the three-minute time span.

On this evidence, the case was submitted to the jury, which returned a verdict in favor of appellees. The trial court entered a judgment on the verdict from which appellant brings this appeal. Appellant cites nine assignments of error:

"I. The Trial Court Erred To The Prejudice Of Plaintiff In Refusing To Allow Cross–Examination Of Defense Witnesses Bitner And O'Grady As To Bias Based Upon Their Interest In Or Employment By An Underlying Medical Malpractice Insurance Company.

"II. The Trial Court Erred To The Prejudice Of Plaintiff by Unreasonably Restricting Her Ability To Communicate The Fact Of Perjury, Cover-up Or Conspiracy Of Silence To The Jury.

"III.  The Trial Court Erred To The Prejudice Of Plaintiff By Denying Plaintiff's Counsel's Motion To Give A Cautionary Instruction to the Jury Following The Voir Dire Examination Of Juror David A. Holman To Disregard Opinions Held And Comments Made By Mr. Holman.

"IV.  The Trial Court Erred To The Prejudice Of Plaintiff By Allowing The Decision Of The Arbitration Panel To Be Read Aloud To The Jury.

"V.  The Trial Court Erred To The Prejudice Of Plaintiff By Playing Music In The Courtroom While The Jury Was Deliberating And Refusing To Inquire Of The Members Of The Jury As To Whether They Could Hear Same.

"VI.  The Trial Court Erred To The Prejudice Of Plaintiff By Refusing To Admit Into Evidence Photographs Of The Decedent.

"VII.  The Trial Court Erred To The Prejudice Of Plaintiff In Allowing The Arbitration Testimony Of Dr. Lyle Holland To Be Presented To The Jury.

"VIII.  The Trial Court Erred To The Prejudice Of Plaintiff By Refusing To Allow Counsel To Cross–Examine Richard Osterhout Under R.C. 2317.52.

"IX.  The Trial Court Erred To The Prejudice Of Plaintiff By Giving Defendant Toledo Hospital's Proposed Instruction No. 15."

## A

We will first examine appellant's Assignments of Error III through IX. Matters of juror selection and voir dire,[2] evidentiary rulings,[3] and overall conduct of a trial[4] are within the discretion of the trial court.  "The term 'abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. * * *"  *Berk v. Matthews, supra,* at 169, 559 N.E.2d at 1308, citing *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 173, 404 N.E.2d 144, 149.

## ASSIGNMENT OF ERROR III

■  During voir dire, one of the potential jurors upon examination stated that his wife, a surgical nurse, was familiar with one of appellees' medical experts.  In fact, the prospective juror stated that his wife considered Dr. Thomas O'Grady "one of her favorite physicians."  Additionally, the same prospective juror opined that he did not believe doctors committed malpractice, which he defined as attempting to hurt someone.  This prospective juror was

---

2.  *Berk v. Matthews* (1990), 53 Ohio St.3d 161, 168–169, 559 N.E.2d 1301, 1307–1309.

3.  *State v. Long* (1978), 53 Ohio St.2d 91, 98, 7 O.O.3d 178, 181–182, 372 N.E.2d 804, 808.

4.  *Booksbaum v. Christian* (App.1936), 21 Ohio Law Abs. 129, 5 O.O. 267.

challenged for cause and removed from the panel, but the trial court denied appellant's motion to instruct the panel to disregard this statement. Appellant argues that the court's failure to issue a cautionary instruction was reversible error. We disagree.

In support of this assignment, appellant directs our attention to *State v. Strong* (1963), 119 Ohio App. 31, 26 O.O.2d 134, 196 N.E.2d 801. In that case, during a capital murder trial a prospective juror stated, "I usually don't believe in capital punishment but in this case I do * * *. This man, he killed two people * * * and a dog." *Id.* at paragraph one of the syllabus. In *Strong,* the appeals court reversed, finding that it was error for the trial court not to dismiss the entire jury panel after such an inflammatory statement had been made. The court stated, in dicta, that had the case not been a capital case a cautionary instruction would have been sufficient.

There is a palpable difference between the *Strong* statements and those made in the instant case. The *Strong* statements were at once inflammatory and contained prejudicial allegations beyond the scope of the defendant's indictment for a single homicide. In contrast, the juror's statement in the case at bar served only to (1) bolster the reputation of an expert witness whose testimony mostly duplicated that of other testifying medical experts, and (2) exhibit an ill-conceived notion of the meaning of the word "malpractice." Neither of these offers any great potential to prejudice appellant's case. The juror's notion of the law was corrected by the court's instructions. Accordingly, the trial court acted within its discretion in denying appellant's request. Appellant's third assignment of error is not well taken.

## ASSIGNMENT OF ERROR IV

R.C. 2711.21(C),[5] effective at the time this case was initiated, allowed for the decision of an arbitration board to " * * * be admitted into evidence at trial upon the offer of any party * * *." At trial, appellees offered the arbitration decision which was rendered in their favor. Appellees requested that it be read into the record. Appellant objected, arguing that the statute mandated admission of the decision, not that it be read into the record. Reading the decision into the record would exaggerate its weight, argued appellant. The trial court's decision to read the arbitration decision into the record as opposed to simply have it admitted into evidence is assigned as error.

---

5.  The statute was amended effective October 20, 1987, to exclude arbitration decisions from evidence in a medical malpractice suit *de novo* trial. See Am.Sub.H.B. No. 327, 142 Ohio Laws, Part II, 3322, 3339.

Trial depositions, self-authenticating documents and other types of evidence are frequently read to the jury during trial. We believe the trial court was within its discretion in reading the arbitration decision into the record in this case. Appellant's fourth assignment of is not well taken.

## ASSIGNMENT OF ERROR V

During jury deliberations, the trial court ordered a radio to be played in the courtroom. Appellant requested that the music be turned off or that the court inquire whether the music disturbed the jurors, who were deliberating in a nearby room. The trial court refused to do either, explaining that the purpose of the music was to preserve the privacy of jury deliberations. The court noted that a bailiff had informed the court that one of appellant's counsel "was listening, and at certain points he would be animated about responses, and in fact at one time, I don't know how to describe this on the record, he clenched his fists and pulled his arm down and said 'great' or 'yeah.' "

We find the trial court acted well within its discretion in ensuring the privacy of jury deliberations. Accordingly, appellant's fifth assignment of error is not well taken.

## ASSIGNMENT OF ERROR VI

The trial court, finding that the probative value of color photographs of appellant's comatose decedent was substantially outweighed by the danger that these pictures would generate unfair prejudice, denied admission of the photographs. We cannot say that the trial court's decision in this respect was unreasonable, arbitrary or unconscionable. See Evid.R. 403; *State v. Adams, supra.* Accordingly, appellant's sixth assignment of error is not well taken.

## ASSIGNMENT OF ERROR VII

Appellant assigns as error the admission over her objection of the videotape deposition of one of appellees' medical experts, Dr. Holland. Appellant asserts that Dr. Holland's videotape deposition was prepared for the arbitration panel only and that to permit its use at trial destroys the *de novo* nature of the trial. Appellant further argues the inequity of not having an opportunity for a "fresh cross-examination."

We are, however, unaware of any requirement in R.C. 2711.21, or any other statute dealing with a *de novo* trial, that mandates that the court have new and different evidence than what was submitted in its antecedent proceeding. With respect to appellant's contention that she did not have an

opportunity to freshly cross-examine Dr. Holland, appellees correctly point out that appellant was fully aware of appellees' intention to use Dr. Holland's videotape deposition at trial for nearly a year following arbitration. If appellant desired a fresh opportunity to cross-examine Dr. Holland, she needed to do no more than schedule a new deposition with him. Furthermore, appellant could have herself called Dr. Holland as a witness. Having failed to do this, appellant has waived any potential objection on the issue. Appellant's seventh assignment of error is not well taken.

## ASSIGNMENT OF ERROR VIII

Assignment of Error VIII is somewhat perplexing. Appellant called respiratory therapist Richard Osterhout as an employee of an adverse party. Pursuant to Evid.R. 611(C), the trial court permitted appellant to question Osterhout using leading questions. The record shows that, to some degree, appellant was also permitted to impeach Osterhout's testimony.

The occurrence of which appellant complains was a statement made by the court which allowed appellant to ask Osterhout leading questions, but denied appellant the right to cross-examine him. For practical purposes, the difference between being allowed to ask leading questions and impeach a witness as opposed to being able to cross-examine a witness is essentially one of semantics. Accordingly, we find appellant's eighth assignment of error not well taken.

## ASSIGNMENT OF ERROR IX

At trial, appellant objected to the inclusion of the following instruction requested by appellee Toledo Hospital:

"The mere fact that a bad result or a complication followed the care or treatment which the defendants administered does not in itself require you to find that the defendants failed in the duty they owed to their patient, which duty I have defined for you.

"If they exercise the degree of care and skill the law requires of them, they cannot be found to have failed in their duties simply on the basis of the results or complications that followed."

Appellant asserts that this instruction is misleading because there is no issue of a "bad result" during the surgery. In the alternative, appellant argues that the challenged instruction is unnecessarily repetitive of one of appellant's own requested instructions.

Individual jury instructions must be considered in the context of the entire charge. *State v. Porter* (1968), 14 Ohio St.2d 10, 43 O.O.2d 5, 235

N.E.2d 520, at paragraph two of the syllabus. Ignoring the internal inconsistency of appellant's argument, we have examined the jury instructions given. It is our belief that, within the context of the whole, the jury instruction complained of would be unlikely to confuse any juror. Further, the instructions correctly stated the law. Accordingly, appellant's ninth assignment of error is not well taken.

### B

We will now simultaneously discuss appellant's first and second assignments of error. Central to appellant's case was the factual issue of whether CPR was begun on appellant's decedent within a minute of observing cardiac arrest as was reported by Dr. Stevens and the other operating personnel, or, in conformity with the testimony of Beth Lashaway and Michele Bristoll, not begun for three to six minutes after the arrest was observed. All of the medical experts called by the parties agreed that a three-minute delay in beginning CPR constituted a departure from accepted medical practices. This issue was pivotal to the question of direct malpractice by the anesthesiologist, Dr. Stevens. It was persuasive relative to the issues of whether the surgeon, Dr. Van Bergen, contributed to the death in leaving the operating room when he did and whether the hospital was negligent in failing to require the surgeon to stay with the patient.

Appellant's principal trial witness was Beth Lashaway, a registered nurse employed by the hospital at the time of Costell's surgery. Lashaway's original statement was that no one in the operating room began CPR for at least three minutes following "flat line." She later recanted this statement, then returned to her original statement, asserting that Toledo Hospital risk manager, Len Bitner, had coerced her to change her comments. Appellant sought to assert that the hospital, through Bitner, and the doctors named as defendants attempted to orchestrate a cover-up of the three-minute delay by threatening witnesses. This was a "conspiracy of silence" according to appellant. The trial court, however, refused to let appellant use the words "cover-up" or "conspiracy of silence" during opening statements. Further, the trial court would not allow a discussion of charges that appellees had attempted to suborn perjury. This ruling is the basis of appellant's second assignment of error.

Additionally, at the time of trial, Len Bitner was no longer employed at the Toledo Hospital. Bitner had since become a senior vice president of Physicians Insurance Exchange ("PIE"), a mutual insurance company which provided medical malpractice insurance for appellee Dr. Van Bergen and for one of appellees' expert witnesses, Dr. Thomas O'Grady. At trial, appellant was

denied the opportunity to impeach Bitner's testimony by revealing his employment with an insurance company that had a direct financial interest in the outcome of the trial by virtue of its liability for Dr. Van Bergen's alleged malpractice. The court also denied appellant the opportunity to disclose Dr. O'Grady's financial interest as a participant in the mutual insurance company, PIE.[6] In both instances, the trial court ruled that the potential prejudicial effect of knowing that one of appellees was covered by liability insurance substantially outweighed its probative value. This ruling is the basis of appellant's first assignment of error.

There exists among some in the legal community the mistaken notion that if anyone during the course of a trial mentions the word "insurance," an insured defendant is then entitled to a mistrial. In fact this is not the rule and never has been the rule.

Evid.R. 411 provides:

"RULE 411. Liability Insurance

"Evidence that a person was or was not insured against liability is not admissible upon the issue whether he acted negligently or otherwise wrongfully. This rule does not require the exclusion of evidence of insurance against liability when offered for another purpose, such as proof of agency, ownership or control, if controverted, or bias or prejudice of a witness."

With the exception of the added words "if controverted," the language of the Ohio rule is identical to the federal rule. According to the legislative notes accompanying the rule, it is in conformity with prior Ohio practice. 23 Page's Ohio Revised Code 534; See, also, *Frank v. Corcoran* (1926), 25 Ohio App. 356, 158 N.E. 501; *Kraemer v. Bates Motor Transport Lines, Inc.* (1937), 56 Ohio App. 427, 9 O.O. 125, 11 N.E.2d 105. "[T]he exclusionary principle of Rule 411 applies only where liability insurance is offered to establish negligence or culpability." *Beck v. Cianchetti* (1982), 1 Ohio St.3d 231, 236, 1 OBR 253, 257, 439 N.E.2d 417, 421, citing Blackmore & Weissenberger, Ohio Evidence (1981) 56. See, also, Annotation (1978), 40 A.L.R. 541, 554. In the case at bar, it is clear that the association of Bitner and Dr. O'Grady to PIE was offered to show not liability or culpability but that each had a continuing and present pecuniary interest in a favorable outcome of the suit. Therefore, the testimony was not the type mandated to be excluded by Evid.R. 411.

---

**6.** Appellant asserted that an award against Dr. Van Bergen might effect the size of the dividend check Dr. O'Grady received from PIE.

Having thus determined that the evidence need not have been excluded by Evid.R. 411, we must next decide whether the trial court abused its discretion in concluding that the introduction of the subject of insurance had greater potential to unfairly prejudice the case than was its probative value. Evid.R. 403(A). Appellant directs our attention to *Charter v. Chleborad* (C.A.8, 1977), 551 F.2d 246, certiorari denied (1977), 434 U.S. 856, 98 S.Ct. 176, 54 L.Ed.2d 128, a federal case cited with favor by the Supreme Court of Ohio in *Beck v. Cianchetti, supra.* *Charter*, like the case at bar, was a medical malpractice action. In *Charter*, as in this case, the defendant offered testimony challenging the credibility of a plaintiff's witness. The plaintiff then sought to impeach the defendant's rebuttal witness by bringing out the fact that he was sometimes employed by defendant's liability insurance carrier. There, as here, the trial court sustained an objection to the introduction of insurance into the trial. The Eighth Circuit Court of Appeals reversed, finding "no indication in the record * * * that any particular prejudice was threatened in the case. Rule 403 was not designed to allow the blanket exclusion of evidence of insurance absent some indicia of prejudice. Such a result would defeat the obvious purpose of Rule 411." *Charter v. Chleborad, supra*, 551 F.2d at 249. The federal court of appeals also pointed out in *Charter* that plaintiff's case rested for the most part on the credibility of his witnesses and that because of the importance of that testimony, the plaintiff was entitled to attempt to show possible bias from one who sought to impugn that testimony.

We can see no material difference between the case at bar and *Charter*. Our review of the record fails to disclose any factors showing special prejudice to appellees. Appellant had every right to attempt to impeach the testimony of Bitner and Dr. O'Grady by revealing any possible bias or prejudice they might have held as a result of their employment or financial relationships with PIE. We believe the denial of that right was unreasonable. Therefore, the trial court abused its discretion when it excluded this line of questioning. Accordingly, appellant's first assignment of error is well taken.

■ Appellant's second assignment of error concerns a ruling by the trial court to the effect that appellant's counsel, in his opening statement, could refer to inconsistent statements of witnesses, but could not employ terms such as "perjury" or "cover up." That is, the trial court did not allow counsel to inform the jury he expected to prove that some statements were more than mere error, but were intentionally false statements. Under the facts of this case, where appellant was able to adduce evidence which, if believed, establishes a concerted effort to conceal the truth, we find the ruling of the trial court to be unreasonable. In so ruling, we make no finding regarding the

truth of any assertions by either party. We merely note that the issue of a planned concealment was properly raised.

Counsel is generally to be accorded wide latitude in opening statements. *Maggio v. Cleveland* (1949), 151 Ohio St. 136, 140, 38 O.O. 578, 580, 84 N.E.2d 912, 915. Generally, counsel should be allowed to lay out the evidence that will be presented. *Id.* In this case, counsel did not intend to prove mere inconsistent statements. Instead, it is apparent that counsel intended to prove deliberate falsehoods. There is an enormous difference between the two and counsel should be allowed to alert the jury to anticipate the evidence.

Finally, we note that in a different context the court's prohibition concerning the use of these words might constitute harmless error. However, in the instant case where the credibility of witnesses is dispositive, we believe this limiting effort by the court was prejudicial to appellant's case. Accordingly, appellant's second assignment of error is well taken.

On consideration whereof, the court finds substantial justice has not been done the party complaining, and judgment of the Lucas County Court of Common Pleas is reversed. This cause is remanded to said court for further proceedings not inconsistent with this decision. It is ordered that appellees pay the court costs of this appeal.

*Judgment reversed*
*and cause remanded.*

GLASSER, P.J., and HANDWORK, J., concur.