NEAL GOLDEN, Plaintiff-Appellant and Separate Appellee, v. KISHWAU-KEE COMMUNITY HEALTH SERVICES CENTER, INC., *et al.*, Defendants-Appellees (Skokie Valley Community Hospital, Inc., Defendant and Separate Appellant; Elliot Goldin *et al.*, Defendants and Separate Appellants).

First District (2nd Division)    No. 1—91—1742

Opinion filed December 13, 1994.—Rehearing denied January 13, 1995.

Power, Rogers & Lavin, of Chicago (Joseph A. Power, Jr., Larry R. Rogers, David A. Novoselsky, and Linda A. Bryceland, of counsel), for appellant Neal Golden.

Clausen, Miller, Gorman, Caffrey & Witous, P.C., of Chicago (Fredric J. Grossman, James T. Ferrini, and Edward M. Kay, of counsel), for appellants Elliot Goldin and North Suburban Clinic, Ltd.

Lord, Bissell & Brook, of Chicago (Harold L. Jacobson and Hugh C. Griffin, of counsel), for appellant Skokie Valley Community Hospital, Inc.

French, Kezelis & Kominiarek, P.C., of Chicago (Alfred C. Tisdahl, Jr., Russell P. Veldenz, and Randall J. Gudmundson, of counsel), for appellee Kishwaukee Community Health Services Center, Inc.

Pretzel & Stouffer, Chartered, of Chicago (Robert Marc Chemers and Scott O. Reed, of counsel), for appellees Stanley D. Brandon and De Kalb County Orthopedics, S.C.

Michael Resis and Robert P. Huebsch, both of Querrey & Harrow, Ltd., of Chicago, for appellee M. Scott Peckler, M.D., S.C.

Brian C. Fetzer and Thomas H. Fegan, both of Johnson & Bell, Ltd., of Chicago, for appellees Thomas J. Stilp and Chicago Neurological Surgeons, S.C.

Francis D. Morrissey, Michael K. Murtaugh, and Michael A. Pollard, all of Baker & McKenzie, of Chicago, for appellee Irwin Rich, M.D., S.C.

Jeffrey M. Ammons, of Peterson & Ross, of Chicago, for appellee Andrew Biscan.

JUSTICE HARTMAN delivered the opinion of the court:

This is a consolidated appeal involving a jury verdict in a medical malpractice action. The jury decided in favor of plaintiff Neal Golden (Neal) against Dr. Elliot Goldin, North Suburban Clinic, Ltd. (North Suburban), and Skokie Valley Community Hospital, Inc. (Skokie Valley), but against Neal and in favor of defendants Kishwaukee Community Health Services Center, Inc., doing business as Kishwaukee Community Hospital (Kishwaukee), Stanley D. Brandon and De Kalb County Orthopedics, S.C. (De Kalb), Andrew Biscan, Dr. M. Scott Peckler and M. Scott Peckler, M.D., S.C., Dr. Irwin Rich and Irwin Rich, M.D., S.C., Thomas J. Stilp and Chicago Neurological Surgeons, Ltd. (CNS), the latter decision being the subject of Neal's appeal. Defendants Skokie Valley, Dr. Goldin and North Suburban separately appeal from that part of the jury verdict against them and in favor of Neal.

In order to comply with recently adopted page limitations set forth in Supreme Court Administrative Rule MR No. 10343, which accompanied amended Supreme Court Rule 23 (Official Reports Advance Sheet No. 15 (July 20, 1994), R. 23, eff. July 1, 1994), the written disposition in this appeal will be bifurcated into this opinion, to be published, and an unpublished Rule 23 order disposing of the remaining, nonprecedential issues, filed contemporaneously with this opinion.

The following issues are presented in these appeals; their disposition, whether by this opinion or Rule 23 order (Rule 23), is designated in parenthesis. Neal questions whether the circuit court erred (1) in striking the *res ipsa loquitur* counts in his second amended complaint (opinion); (2) in barring evidence of the transfer to another hospital of a second motorcycle accident victim (Rule 23); (3) in prohibiting Neal from cross-examining defense medical experts about their association with the insurer of several defendants (opinion); (4) in

permitting defendants to violate various motions *in limine* (Rule 23); (5) in permitting defendants to use an unidentified patient's medical records at trial (Rule 23); (6) in directing a verdict on the issue of apparent agency (opinion); (7) in barring certain expert testimony (Rule 23); (8) in instructing the jury (Rule 23); (9) in permitting defendants to cross-examine codefendants' experts (Rule 23); and (10) whether the jury's verdict was against the manifest weight of the evidence (Rule 23). Separate defendants-appellants raise the following issues: whether the circuit court erred (1) in failing to inquire about a juror's ability to remain impartial (opinion); (2) in denying defendants' motions to allow the jury to review a "day-in-the-life" film prior to *voir dire* and to compel Neal's presence during *voir dire* (opinion); (3) in allowing a respiratory therapist to testify as an expert witness (opinion); and (4) in failing to order a satisfaction of judgment in favor of certain defendants (Rule 23).

On October 23, 1979, Neal and his companion Mark Olendorf were injured in a motorcycle-automobile accident in De Kalb, Illinois. Paramedics arriving at the scene found that Neal was not breathing, had no pulse or heartbeat, and his head was flexed forward indicating that he had sustained a broken neck. They removed Neal's helmet, applied a cervical collar, administered CPR, inserted an esophageal obturator airway (EOA) and administered Ringer's lactate intravenously. They transported Neal to Kishwaukee.

Neal arrived at Kishwaukee's trauma room at 1:05 p.m. where he was met and treated by Dr. Brandon, Dr. Biscan, Nurse Jan Heal and nurse anesthetist James Dionisopoulos. Dr. Brandon later decided to transfer Neal to a hospital which had long-term care capabilities and the services of specialists which Kishwaukee did not have. He considered Skokie Valley, St. Anthony's in Rockford and Northwestern Memorial Hospital (Northwestern) in Chicago prior to the transfer. Kishwaukee's personnel were unable to reach Neal's family. Dr. Brandon subsequently transferred Neal to Skokie Valley, in Neal's hometown, because it could provide needed neurosurgical, orthopedic and other special medical care, and it was suggested by Neal's friends as being close to his family. Skokie Valley accepted Neal as a patient.

Neal was taken to Skokie Valley by ambulance. When he arrived, at approximately 3:50 p.m., he could voluntarily move his limbs to a degree, was responsive and cooperative. He was seen by Drs. Peckler, Rich, Stilp, and Goldin, in that order. Some time later he abruptly stopped breathing, but was successfully resuscitated. During the night he developed a facial seizure and ran a temperature. The next morning, Neal was unable to move his extremities

and has remained paralyzed from the neck down. Additional facts will be stated as necessary in the body of this opinion. A more expansive recounting of the medical facts is set forth in the Rule 23 order previously mentioned.

Neal filed suit in 1981 and subsequently filed an amended complaint to which answers by various defendants were filed. Neal alleged that the treatment he received from defendants either caused or contributed to his paralysis and other conditions. An array of pretrial motions was filed and disposed of prior to the jury trial which ensued. The circuit court directed verdicts in favor of Kishwaukee on the issue of whether Dr. Brandon, Dr. Biscan and Nurse Dionisopoulos were its apparent agents, and in favor of Skokie Valley on the issue of whether Drs. Peckler, Rich, Goldin and Stilp were its apparent agents. The jury returned a verdict in favor of Kishwaukee and Drs. Brandon, Biscan, Peckler, Rich and Stilp, but found against Skokie Valley, Dr. Goldin and North Suburban and awarded Neal $7,012,000, later reduced to $6,887,000 by order of court. Post-trial motions were denied.

## I

Neal argues first that the circuit court erred in striking the *res ipsa loquitur* counts in his second amended complaint.

Initially, it should be noted that Neal did not attempt to add the *res ipsa loquitur* counts until nine years after the case had been filed and already assigned for trial to a judge. The circuit court's decision to allow or deny amendment of a complaint to plead *res ipsa loquitur* is discretionary. (*Taylor v. City of Beardstown* (1986), 142 Ill. App. 3d 584, 591, 491 N.E.2d 803.) The denial of leave to file amended complaints on the eve of trial, where the moving party knew of the matter at the time of the original pleading, is not an abuse of discretion. *Trident Industrial Products Corp. v. American National Bank & Trust Co., N.A.* (1986), 149 Ill. App. 3d 857, 501 N.E.2d 273.

Neal waited not only nine years but until the case was assigned a trial judge before seeking to add the *res ipsa loquitur* counts. Defendants credibly claim that waiting until trial to amend the pleadings unfairly surprised them. During this length of time, defendants had been conducting evidentiary discovery, expert witness discovery and otherwise preparing the case for ordinary medical malpractice defense. Neal's untimely motion prevented defendants from completing the necessary discovery and preparation of a *res ipsa loquitur* defense in time for trial under these circumstances, and the court could have so held had it chosen to do so (see *Farnor v. Irmco Corp.* (1979), 73 Ill. App. 3d 851, 392 N.E.2d 591), and should have so held in the interest of the expeditious administration of justice.

The circuit court struck the counts, however, because Neal failed to establish "exclusive control." Although this case involves multiple parties, Neal maintains that all defendants exercised joint control because Kishwaukee improperly transferred him to Skokie Valley, a hospital incapable of treating his injuries. To establish *res ipsa loquitur*, plaintiff must demonstrate that he was injured in an occurrence that ordinarily does not happen in the absence of negligence and that defendants had exclusive control of the instrumentality that caused the injury. *Dyback v. Weber* (1986), 114 Ill. 2d 232, 242, 500 N.E.2d 8.

In the case *sub judice*, Neal failed to demonstrate that defendants acted jointly. Drs. Brandon and Biscan treated him only at Kishwaukee. No record evidence shows that Dr. Biscan ever touched or physically examined him. Dr. Brandon and Joyce Davidson, Kishwaukee's head emergency room nurse, testified without contradiction that Kishwaukee's transfer policies were only guidelines that did not prohibit a transfer to Skokie Valley. Significantly, Neal was reasonably alert upon his arrival there and moved all four extremities. At Skokie Valley, Drs. Peckler, Rich, Stilp and Goldin provided treatment independently from that administered by Drs. Brandon and Biscan. Dr. Fein, Neal's own expert witness, was of the opinion that he became quadriplegic after being treated by these latter defendants. Clearly, Neal received different treatment by different entities and persons at different times in different locations; the requisite control was not shown as to permit application of the *res ipsa loquitur* doctrine. (*Loizzo v. St. Francis Hospital* (1984), 121 Ill. App. 3d 172, 179-80, 459 N.E.2d 314, *appeal denied* (1984), 99 Ill. 2d 529.) The circuit court did not abuse its discretion.

## II

Six of defendants' expert medical witnesses are insured by the Illinois State Medical Inter-Insurance Exchange (Exchange), a mutual insurance company in which all such insureds are owners. One such expert, Dr. David Conner, who testified principally on behalf of Dr. Brandon, also reviewed cases filed against members of the Exchange for the purpose of determining whether premium rates paid by a doctor defendant should be adjusted. There is no evidence that Dr. Conner reviewed the rates paid by any expert who testified in the present case. Before trial, Dr. Brandon moved *in limine* to exclude evidence of the association of Dr. Conner with the Exchange, which also insures several party defendants in this action. The motion was granted. The court also barred any reference to any association of defense experts with the Exchange. The court recognized the proba-

tiveness of that evidence, but held that the potential prejudice which would result from that reference outweighed its probative value. On appeal, Neal claims the circuit court erred in prohibiting him from this cross-examination to show the doctors' possible financial interest in the outcome of the case.

The principal safeguard against errant expert testimony is the opportunity of opposing counsel to cross-examine, which includes probing for bias, partisanship or financial interest. (*Trower v. Jones* (1988), 121 Ill. 2d 211, 217, 520 N.E.2d 297; *Sears v. Rutishauser* (1984), 102 Ill. 2d 402, 407, 466 N.E.2d 210.) Although counsel must be given the widest possible latitude during cross-examination of an expert witness (*Sanchez v. The Black Brothers Co.* (1981), 98 Ill. App. 3d 264, 271, 423 N.E.2d 1309), limitation of such cross-examination rests within the sound discretion of the circuit judge. *Sears*, 102 Ill. 2d at 407-08; *Parvin v. Sill* (1985), 138 Ill. App. 3d 325, 330, 486 N.E.2d 262.

■ The issue of whether common membership in a mutual medical malpractice insurance program can be used to impeach a defense expert in a medical malpractice case is one of first impression in this State. Reference to the fact that defendant is protected by insurance or some other indemnity agreement ordinarily is improper and constitutes reversible error. (*Kirbach v. Commonwealth Edison Co.* (1976), 40 Ill. App. 3d 587, 591, 352 N.E.2d 468.) Exceptions have developed, however, which allow introduction of the fact of insurance where it bears materially upon the credibility of a witness or an impeaching statement. *Kirbach*, 40 Ill. App. 3d at 591.

The circuit court's ruling with respect to barring cross-examination of defense medical experts as to their mutual membership in the Exchange was within its discretion, particularly in the absence of any showing of how many mutual members are associated in the Exchange or any explanation of how or to what extent individual members would profit in the event of a favorable decision.

The situation changes, however, in the instance of Dr. Conner, Dr. Brandon's expert, who testified in his behalf and, incidentally, favorably for Kishwaukee. Dr. Conner was shown to have more than a cursory interest in this case. Dr. Conner performed significant economic services for the Exchange in reviewing claims made against the Exchange's doctor members to determine if those suits should have any impact on the insurance premiums they pay. The possibility of some significant question of bias exceeding potential prejudice should have been recognized by the court in this instance. The benefit to the Exchange in premium adjustments that take place is ineluctable. As stated in *Barton Plumbing Co. v. Johnson* (Tex. Civ.

App. 1955), 285 S.W.2d 780, 781, involving expert medical testimony of a doctor having a relationship with the insurance company implicated there (and quoting in part from *Aguilera v. Reynolds Well Service, Inc.* (Tex. Civ. App. 1950), 234 S.W.2d 282, 285):

> " 'We are unwilling to hold that an agent of an insurance company which is a real party at interest may take the stand as an apparently disinterested witness, give testimony damaging to the opposing party, and then be exempt from cross-examination designed to show his connection with the company.' ***
>
> *** [T]here is a vast difference between the probable bias or interest of an independent contracting doctor and medical witness who is shown to have been employed by and paid by the litigant offering his testimony, and that of such a witness who, in addition to his ordinary fees, is entrusted with the economic affairs of an insurance carrier for the defendant and has a consequent direct interest in the outcome of the litigation."

(See also *Costell v. Toledo Hospital* (1992), 82 Ohio App. 3d 393, 612 N.E.2d 487.) We concur.

Neal erroneously was denied the right to probe any possible bias or interest that Dr. Conner may have possessed, for the benefit of the jury. Accordingly, the cause must be reversed as to Dr. Brandon and Kishwaukee and remanded for a new trial.

### III

Neal next contends the circuit court erred in directing a verdict in favor of Kishwaukee on the issue of apparent agency, finding that the hospital was not vicariously liable for the actions of Dr. Brandon and Nurse Dionisopoulos.

■ Under the doctrine of apparent authority, a hospital can be held vicariously liable for the negligent acts of a physician providing care at the hospital (*Gilbert v. Sycamore Municipal Hospital* (1993), 156 Ill. 2d 511, 524, 622 N.E.2d 788) where it is shown that: (1) the hospital, or its agent, acted in a manner that would lead a reasonable person to conclude that the individual who was alleged to be negligent was an employee or agent of the hospital; (2) where the agent's acts create the appearance of authority, plaintiff must also prove that the hospital had knowledge of and acquiesced in them; and (3) plaintiff acted in reliance upon the conduct of the hospital or its agent, consistent with ordinary care and prudence. (*Gilbert*, 156 Ill. 2d at 525, quoting *Pamperin v. Trinity Memorial Hospital* (1988), 144 Wis. 2d 188, 207-08, 423 N.W.2d 848, 855-56.) The element of justifiable reliance is satisfied if plaintiff relies upon the hospital to provide complete emergency room care, rather than upon a specific physician. (*Gilbert*, 156 Ill. 2d at 525.) Because Neal was unconscious

when brought by ambulance to Kishwaukee, defendants assert that he would be unable to prove his detrimental reliance upon the hospital's ability to provide complete emergency room care.

In a recent case, *Monti v. Silver Cross Hospital* (1994), 262 Ill. App. 3d 503, 637 N.E.2d 427, the court considered whether the fact that a patient was unconscious when transported to a hospital emergency room would preclude imposition of vicarious liability under an apparent agency theory. The court noted that the emergency personnel who responded to the call for assistance and selected defendant hospital satisfied the reliance element of the apparent authority doctrine, reasoning that "[n]either logic nor equity would be served by drawing a distinction between conscious and unconscious patients, allowing the former to recover on a theory of vicarious liability but not the latter." (*Monti*, 262 Ill. App. 3d at 507-08.) We find the *Monti* court's reasoning persuasive and applicable to the present facts.

■ In the case *sub judice*, the fact that Neal was unconscious when brought to Kishwaukee does not preclude recovery on a theory of vicarious liability because the emergency personnel who transported him there implicitly relied upon the hospital's ability to provide the services and care he required. To permit only conscious patients to seek recovery based on vicarious liability not only defies logic but also denies the reality of hospital emergency room care, since, "[m]ore often than not, the receiving hospital is chosen by the driver of the emergency vehicle or private care conveyance and the primary concern of all involved is to get to the closest hospital as quickly as possible." (*Pamperin*, 144 Wis. 2d at 218-19, 423 N.W.2d at 860 (Steinmetz, J., dissenting, joined by Bablitch, J.).) Kishwaukee's argument that Neal failed to show detrimental reliance cannot be sustained here.

Expert testimony asserted that Dr. Brandon, an orthopedic surgeon on call at Kishwaukee when Neal was brought in, deviated from the standard of care for Neal in failing to maintain an adequate airway; establish the degree of oxygenation with blood gases; attach a CVP line; provide sufficient blood and other fluids; replace the EOA with a more appropriate device; and properly immobilize Neal's head and neck, all of which assertedly led to his quadriplegia. There was evidence that Nurse Dionisopoulos, not named as a defendant in this action, was delegated the specific responsibility for managing Neal's airway while he was at Kishwaukee. Dionisopoulos attempted to insert a nasogastric tube in Neal but was unable to make the insertion with the EOA in place. He removed the EOA, but prior to the removal, Dionisopoulos never orally intubated Neal to create a new airway, which expert testimony claimed to have been a deviation from the standard of care contributing to Neal's quadriplegia.

There was enough evidence adduced in support of Neal's theory of apparent agency as to Dr. Brandon and Nurse Dionisopoulos upon which to submit the question of Kishwaukee's liability on this point to the jury, and a verdict should not have been directed in this instance (*Darnell v. Impact Industries, Inc.* (1984), 105 Ill. 2d 158, 162, 473 N.E.2d 935), which requires reversal and remandment for a new trial as to Dr. Brandon and Kishwaukee, together with the new trial ordered under Point II of this opinion. With respect to the verdict directed in favor of Skokie Valley on this issue involving Drs. Peckler, Rich and Stilp, the jury found in favor of these doctors; there is no basis, therefore, for remandment and retrial.

## IV

Separate defendants Skokie Valley, Dr. Goldin and North Suburban argue the circuit court erred in failing to inquire about a juror's ability to remain impartial.

The facts involved in this issue are as follows. On Friday, February 23, 1990, Neal and his mother testified and the jury viewed a video depicting his daily activities and care. On Monday, February 26, 1990, a juror sent the circuit judge the following:

"This letter is written with sincere respect for you, your Court, and our judicial system. However, I found Friday's testimony and demonstration to be emotional and powerfully influential for me, possibly due to my career choice as a rehabilitation counselor or my overall personality characteristics which include hypersensitivity and compassion for others. I am finding it personally difficult to remain unbiased in this case and am experiencing stress due to personal beliefs and values. If at all possible I would sincerely appreciate a release from duty with respect to this case. Thank you."

The circuit court denied her request stating:

"You know, it's supposed to be unbiased going in, but once you start hearing the evidence that is a problem.

*** You have got almost—the plaintiff's case is almost complete, and you would expect at the end of the plaintiff's case that a lot of the jurors would be favoring the plaintiff, I would think. It's been my experience that once you get the battery of defense experts in here it starts to change and we get a more balanced view of it."

Litigants are entitled to an impartial panel of jurors who are free from bias or prejudice. (*Kingston v. Turner* (1987), 115 Ill. 2d 445, 464, 505 N.E.2d 320.) Discharge of a juror is a matter of discretion to be exercised by the circuit judge; prejudice must be shown in order to warrant reversal. *Lowe v. Norfolk & Western Ry. Co.* (1984), 124 Ill. App. 3d 80, 105, 463 N.E.2d 792.

■ In the instant case, the circuit court did not err in declining to conduct an inquiry regarding the juror's impartiality. Her note did not state that she could not render an unbiased decision, but merely indicated that she was finding it "difficult" after hearing highly emotional testimony and viewing compelling evidence. The circuit court noted that jurors tend to favor a plaintiff toward the end of his or her case in chief. The court further observed that jurors have a more balanced view of the evidence after the defense presents its case. It was natural for a juror to feel sympathy for a quadriplegic plaintiff and to be influenced by his evidence. The fact that the evidence was "powerfully influential," however, does not constitute "bias" or "prejudice" warranting inquiry or dismissal of a juror. The wisdom of the court's observation is supported by the fact that the jury unanimously found the Kishwaukee defendants not guilty as well as three Skokie Valley defendants. Whatever difficulty the juror encountered was demonstrably overcome by her participation in a unanimous verdict.

The cases Skokie Valley, Dr. Goldin and North Suburban rely upon are distinguishable from the case *sub judice*. In *People v. Peterson* (1973), 15 Ill. App. 3d 110, 303 N.E.2d 514, the court erred when it failed to inquire into a juror's comment made *before* trial started that she wanted defendants to plead guilty so she could go home. In *Lowe v. Norfolk & Western Ry. Co.* (1984), 124 Ill. App. 3d 80, 463 N.E.2d 792, the court erred in excusing a hysterical juror without inquiring into whether her emotional condition was the result of coercion or duress.

Here, the juror stated that the testimony and evidence at trial was beginning to have an effect upon her. She did not claim to have been biased at the trial's inception, nor did she claim to have been subject to coercion or duress during the trial. Instead, she was becoming influenced by compelling evidence in an emotional case. It is every trial lawyer's expectation that evidence submitted and not yet explained or refuted will begin to influence a judge or juror. There was nothing improper in such a state of affairs. The circuit court was not required to make an inquiry under these facts.

## V

Skokie Valley, Dr. Goldin and North Suburban assert the circuit court erred in denying their motions to allow the jury to review a day-in-the-life film prior to *voir dire* and to compel Neal's presence during *voir dire*.

The record indicates that these motions were never filed nor did defendants object to the video not being shown prior to *voir dire*. In fact, one defense counsel stated:

"I'd like to see [the video]. I want to know if I have objections to it, whatever. I don't think it has to be done necessarily *before we start voir dire,* but it certainly has to be done before we do opening statements." (Emphasis added.)

Failure to make a timely objection to the admission of evidence constitutes a waiver of that objection. *Dombrowski v. Laschinski* (1978), 67 Ill. App. 3d 506, 511, 385 N.E.2d 35.

The only legitimate function of *voir dire* examination is the selection of an impartial jury. (*Gasiorowski v. Homer* (1977), 47 Ill. App. 3d 989, 994, 365 N.E.2d 43.) Limitation of *voir dire* questioning may constitute reversible error where its effect is to deny a party a fair opportunity to probe an important area of potential bias or prejudice among prospective jurors. (*Gasiorowski,* 47 Ill. App. 3d at 991.) The decision to allow a day-in-the-life film to be shown as an aid in the jury selection process rests within the circuit court's discretion. See *Roberts v. Sisters of Saint Francis Health Services, Inc.* (1990), 198 Ill. App. 3d 891, 556 N.E.2d 662 (*Roberts*).

■ The circuit court's refusal to show this film prior to *voir dire* did not prevent defendants from effectively probing the area of Neal's quadriplegia for bias or prejudice. Defendants' reliance upon *Roberts* is misplaced. That case stands for the proposition that day-in-the-life films *may* be shown prior to *voir dire.* There is no requirement that prospective jurors *must* be shown such a film or that a quadriplegic plaintiff *must* be present before jury selection begins. The circuit court did not abuse its discretion in denying these motions.

## VI

Skokie Valley, Dr. Goldin and North Suburban next insist the circuit court erred in permitting Craig Olesen, a respiratory therapist, to testify as an expert witness regarding Dr. Goldin's care and treatment of Neal. They claim that Neal violated Supreme Court Rule 220(b) (107 Ill. 2d R. 220(b)) by failing to so identify Olesen.

Supreme Court Rule 220 requires the disclosure of an expert witness "who may be expected to render an opinion within his expertise at trial." (107 Ill. 2d R. 220(a)(1); *Smith v. Central Illinois Public Service Co.* (1988), 176 Ill. App. 3d 482, 493, 531 N.E.2d 51.) If a party violates Rule 220 by failing to disclose an expert witness in timely fashion, the expert must be barred from testifying unless this would cause a manifest injustice. (*In re Marriage of Gorsich* (1991), 208 Ill. App. 3d 852, 856, 567 N.E.2d 601.) A party, or an employee of a party, who is intimately involved in the subject matter of the litigation, however, need not be disclosed as an expert witness pursuant to Rule 220(b)(1). *Smith,* 176 Ill. App. 3d at 495; *Voyles v. Sanford* (1989), 183 Ill. App. 3d 833, 836, 539 N.E.2d 801.

■ In the case at bar, Olesen's identity was known to defendants and he was available to all parties for purposes of discovering his testimony. The fact that he testified could not have been a surprise. He was not retained as an expert for the purpose of litigation but was testifying because he was intimately involved in Neal's treatment as a staff respiratory therapist at Skokie Valley. Accordingly, Olesen did not fall within the purview of Supreme Court Rule 220.

Skokie Valley and Dr. Goldin, relying upon *Dolan v. Galluzzo* (1979), 77 Ill. 2d 279, 396 N.E.2d 13, maintain that Olesen was not qualified to testify as an expert against Dr. Goldin since he was neither a licensed physician nor a surgeon. In *Dolan*, the court held that in order to testify as an expert on the standard of care in a given school of medicine, the witness must be licensed therein. *Dolan*, 77 Ill. 2d at 285.

Here, Olesen did not testify as an expert witness on the standard of care, but about his review of Neal's treatment in relationship to his duties as a respiratory therapist. It is not error for the circuit court to permit testimony concerning medical matters by individuals who are not licensed physicians. See *Valiulis v. Scheffels* (1989), 191 Ill. App. 3d 775, 547 N.E.2d 1289. See also *Nicholas v. City of Alton* (1982), 107 Ill. App. 3d 404, 437 N.E.2d 757; *Kinsey v. Kolber* (1982), 103 Ill. App. 3d 933, 431 N.E.2d 1316.

■ Finally, Skokie Valley, Dr. Goldin and North Suburban insist they be granted a new trial because of Olesen's triple hearsay testimony concerning the intubation efforts of Dr. Goldin, which Olesen heard about from others. The court cured any error here by striking the testimony and instructing the jury to disregard it.

For the reasons set forth above, the verdict reached by the jury as to the alleged malpractice negligence of Kishwaukee Hospital and Dr. Brandon, and the verdict directed by the circuit court in Kishwaukee's favor as to the apparent agency of Dr. Brandon and Nurse Dionisopoulos, must be reversed and the cause as to these issues only is remanded to the circuit court for trial. The jury's verdict in all other respects is affirmed.

Reversed and remanded in part with directions; affirmed in part.

SCARIANO and McCORMICK, JJ., concur.