THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. STEVEN SANDERS, Defendant-Appellant.

Fifth District    No. 5—02—0685

Opinion filed July 29, 2003.

Daniel M. Kirwan and Larry R. Wells, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

James Creason, State's Attorney, of Salem (Norbert J. Goetten, Stephen E. Norris, and Patrick D. Daly, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE WELCH delivered the opinion of the court:

On December 5, 2001, defendant Steven R. Sanders was charged by an information filed in the circuit court of Marion County with the offenses of attempted first-degree murder and residential burglary. His jury trial, held July 8 and 9, 2002, ended in a mistrial after the presentation of much of the State's case, when three jurors were removed from the jury for various reasons. The last juror to be removed was removed over the objection of the defendant. This left only 11 jurors to decide the case. When the defendant indicated that he would not waive his right to a jury of 12 and consent to a jury composed of 11 jurors, the trial court declared a mistrial. The case was scheduled for a retrial.

■ On July 12, 2002, the defendant moved to dismiss the charges against him as barred by his constitutional and statutory rights not to be twice placed in jeopardy for the same offense. This motion was denied, and the defendant brings this interlocutory appeal pursuant to Supreme Court Rule 604(f), which allows a defendant to appeal the denial of a motion to dismiss a criminal proceeding on grounds of former jeopardy (188 Ill. 2d R. 604(f)). For reasons that follow, we affirm.

On July 8, 2002, *voir dire* was conducted and a jury of 12 jurors plus 2 alternates was picked and sworn. Opening statements were heard and the State proceeded with the presentation of its evidence. At a recess, a juror indicated that he had observed in the courtroom a woman with whom he was acquainted and who he believed was the defendant's mother. He stated that he did not know her personally and had never spoken with her but that he had at one time attended the same church that she did. The juror indicated that it made no difference to him and that he could be fair to both sides. Both attorneys

were given the opportunity to question the juror. The juror indicated that the fact that he and the defendant's mother had attended the same church would not affect his verdict. Neither attorney objected to the juror, and he remained on the jury. The presentation of the State's case continued until court recessed at the end of the day.

The morning of the second day of trial, while the court and the attorneys were involved in a jury-instruction conference, one of the jurors telephoned and asked to be excused because his wife had been unexpectedly hospitalized the night before. Neither party objected and the juror was excused.

A few minutes later, the same juror who had indicated the day before that he had recognized the defendant's mother in the courtroom again asked to speak with the judge. This juror indicated that upon seeing a witness testify in court, he recognized her as his girlfriend's best friend. He had known her by a name different from that used in court and so had not realized during *voir dire* that he knew her. The juror stated that he knew the witness quite well, he had last spoken with her six months previously but never about the case or the defendant, and he had seen her 50 or 60 times in his lifetime. He felt that his familiarity with the witness/victim would probably have a bearing on his decision in the case. He would see the victim in the future and stated that it would not be fair for him to remain on the jury. He stated that it would be "quite hard" for him to be a fair and impartial juror.

After conferring with his client, the defendant's attorney indicated that his position was that the juror should not be removed. The particular witness, Melissa Brown, was the victim of the residential burglary. She had testified at the trial that she had returned home from work to find her house broken into and ransacked. She had not been present when the crime occurred and could not identify the perpetrator. She simply testified to the fact that her home had been burglarized. According to the defendant, Melissa Brown was not an important witness because she testified only that her home had been burglarized but could not identify the perpetrator. The defendant was not contesting the burglary, only the identity of the burglar. Under these circumstances, the juror's tendency to favor the witness, Brown, did not damage the defendant. The defendant strongly opposed the juror being removed. The State took no position on the question.

The trial court then pointed out that this particular juror had twice before during the pendency of the proceedings sought to be removed from the jury. The court also pointed out that the juror was the only African-American on the panel and that the defendant is also African-American. The trial court reserved ruling.

A third juror then brought to the trial court's attention that he had discussed the case with his family the night before, in violation of his oath, and had learned that his wife and stepdaughters were good friends with the victim of the attempted murder, Will Williams. The juror's wife and stepdaughters had expressed strong feelings in favor of Williams and against the defendant. The juror expressed that he thought he could put these feelings aside and render a fair verdict based on the evidence. He also stated that if he were the defendant, he would not want a juror like himself on the jury. The defendant asked that the juror be removed. The State objected. The trial court granted the defendant's request to remove the juror.

The trial court then also removed the juror who knew Melissa Brown and who had said he would find it "quite hard" to be a fair and impartial juror. At that point only 11 jurors remained. Neither the State nor the defendant requested a mistrial. Nevertheless, the defendant refused to consent to a trial by a jury of 11 jurors. A mistrial was declared and the jury was discharged.

The defendant filed his motion to dismiss the charges on the ground of double jeopardy on July 12, 2002. At the hearing thereon the defendant argued that the trial court had erred in removing the African-American juror over the defendant's objection. Although the juror had indicated that he could not be fair to the defendant, the defendant had objected to his removal. If this juror had not been removed, a mistrial would not have been declared. The State opposed the motion to dismiss, arguing that the trial court had properly removed the juror and that once that juror was removed, a mistrial was manifestly necessary.

After taking the matter under advisement, the trial court denied the motion on October 2, 2002. The defendant brings this interlocutory appeal.

■ The standard of appellate review for testing the trial court's exercise of its discretion in declaring a mistrial without the defendant's consent and after jeopardy has attached was first set forth in *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 6 L. Ed. 165 (1824), and has been consistently followed by the United States Supreme Court:

> "[T]he law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act[ ] or the ends of public justice would otherwise be defeated." *Perez*, 22 U.S. (9 Wheat.) at 580, 6 L. Ed. at 165.

See *United States v. Jorn*, 400 U.S. 470, 481, 27 L. Ed. 2d 543, 554, 91 S. Ct. 547, 555 (1971); *Illinois v. Somerville*, 410 U.S. 458, 461, 35 L. Ed. 2d 425, 429, 93 S. Ct. 1066, 1069 (1973).

Thus, when a trial court declares a mistrial without the defendant's consent, the reviewing court should allow the State to retry the defendant only if the facts demonstrate that a manifest necessity required declaring the mistrial or that a continuation of the proceeding without declaring a mistrial would have defeated the ends of public justice. See *People v. Street*, 316 Ill. App. 3d 205, 211 (2000). A mistrial generally is appropriate if an impartial verdict could not be reached or if a conviction could be obtained but would have to be reversed on appeal due to an obvious procedural error at the trial. *People v. Johnson*, 113 Ill. App. 3d 367, 375 (1983).

■ The defendant argues that because there was no manifest necessity to discharge the last juror, leaving a jury of only 11, the trial court unfairly deprived the defendant of his right to complete his trial before a particular tribunal, a right which is included within the constitutional right to be free from double jeopardy. See *Street*, 316 Ill. App. 3d at 211. The defendant argues that, consequently, the State may not try the defendant a second time and that the trial court erred in denying his motion to dismiss the charges against him.

However, the defendant's right to have his trial completed by a particular jury is in some instances subordinate to the public's interest in fair trials designed to end in just judgments. *Wade v. Hunter*, 336 U.S. 684, 689, 93 L. Ed. 974, 978, 69 S. Ct. 834, 837 (1949). There can be no question that, upon the discharge of the last juror, leaving a jury of only 11, the declaration of a mistrial was manifestly necessary because the defendant would not consent to a trial by a jury of 11 and the law prohibits such a trial without the defendant's consent. *People v. Matthews*, 304 Ill. App. 3d 415, 419 (1999). We also conclude that a continuation of the trial without the discharge of the last juror, who had admitted that he would find it "quite hard" to be a fair and impartial juror, would most certainly have defeated the ends of public justice.

The defendant's argument that the juror's potential bias was irrelevant because Brown's testimony was not damaging to the defendant is misplaced because it focuses on the juror's potential bias with respect to the *substance* of Brown's testimony, rather than her *status* as a victim of the alleged crime. Even if Brown's testimony did not directly implicate the defendant, the juror may have been biased in favor of a conviction simply because his friend was a victim.

The discharge of a juror is a matter of discretion to be exercised by the circuit judge. *Golden v. Kishwaukee Community Health Services Center, Inc.*, 269 Ill. App. 3d 37, 47 (1994). The fact that the defendant had no problem keeping the juror does not mean that the circuit judge should surrender his obligation to ensure a fair trial for both the State

and the defendant. We cannot conclude that the trial court abused its discretion in discharging a juror who had admitted that he would find it "quite hard" to be a fair and impartial juror. Accordingly, there was a manifest necessity to discharge the last juror and declare a mistrial, even though both decisions were contrary to the defendant's wishes.

As the United States Supreme Court stated in *Arizona v. Washington*, 434 U.S. 497, 516, 54 L. Ed. 2d 717, 734-35, 98 S. Ct. 824, 835-36 (1978), neither party has a right to have his case decided by a jury that may be tainted by bias, and in those circumstances the public's interest in fair trials designed to end in just judgments must prevail over the defendant's valued right to have his trial concluded before the first jury impaneled. We hold that the court's declaration of a mistrial met the manifest-necessity requirement since the court could reasonably have concluded that the ends of public justice would be defeated by having allowed the trial to continue with an admittedly biased juror.

We note in closing that the defendant has not alleged, and the record does not indicate, any gross misconduct or overreaching by the judge or the prosecutor, nor does the defendant allege that the judge was motived by bad faith in declaring a mistrial. See *People v. Johnson*, 113 Ill. App. 3d 367, 375 (1983).

For the foregoing reasons, the judgment of the circuit court of Marion County is hereby affirmed.

Affirmed.

CHAPMAN, J., concurs.

JUSTICE KUEHN, specially concurring:

I agree that it was proper for the trial judge to declare a mistrial in this case. Under the circumstance that he confronted, he had no choice in the matter. With only 11 jurors seated, the trial could not be concluded in the absence of the defendant's consent. I also agree that the trial judge acted properly in excusing a juror named Mr. Buckner, despite the defendant's opposition and the defendant's desire to have him, along with the other jurors selected for this trial, decide his fate. While I join in the outcome reached by my colleagues, I disagree with how they arrive at their result. Accordingly, I specially concur.

I take a different view of what happened in this case.

The trial judge did not remove Buckner from the jury panel because of his comment that it would be "quite hard" to be fair and impartial in light of his girlfriend's relationship with one of the crime victims. Nor did the trial judge remove Buckner in an effort to protect

the defendant against his own mistaken perception that Buckner would remain fair to him despite his newly acquired knowledge of the crime victim's identity. This is the majority's view of the reason for the removal—that it was based upon an effort to protect the defendant against himself, by striking a juror the defendant wanted to keep, because the juror had demonstrated a potential bias to convict the defendant. If that were the only reason for striking Buckner, and the judge did so under the circumstances presented here—where the removal invalidated the jury and ended the trial, despite a defendant who insisted upon a trial to a verdict before the jury that he had selected, despite a defendant who maintained faith in the juror's ability to be fair—we should reverse, rather than affirm, the trial judge's ruling.

In truth, the trial judge was not concerned about Buckner's claim that it would be "quite hard" to remain impartial. He was concerned about a series of things that came to light, after the trial had commenced, that suggested the possibility that Buckner was a ringer for the defendant, a juror capable of poisoning the jury pool against the State. Events that occurred during the trial made it reasonable to infer that Buckner initially wanted to be selected for the jury in order to assist the defendant, that he harbored a concealed bias in the defendant's favor, and that he got cold feet about his initial agenda after the evidence came forth. When he was questioned on *voir dire,* Buckner did not tell anyone that he knew the defendant's mother. Then, after most of the evidence was presented, he remembered another problem that did not surface during *voir dire.* He asked for an audience with the judge to reveal that the State had a pending case against him. When his claim was checked out, it was discovered that the case had been closed long before the trial began, and he was not excused. The next day, he asked for another audience to reveal that his girlfriend was the best friend of Melissa Brown, one of the crime victims who testified. During questioning, he had to think twice about who his girlfriend was, making it appear as if he was again lying about the true state of affairs, with a hope to avoid the jury deliberation process.

The trial judge removed Buckner from the jury panel because of his earlier effort to escape the jury by lying about a pending case, because of the fact that he had been prosecuted before and did not say so during *voir dire,* because of his belated admission that he knew the defendant's mother, and because of his prevarication about a girlfriend who was the best friend of Melissa Brown and his fabricated claim that his newly acquired knowledge of who the victim was would make it harder on him to be fair. In assessing Buckner's renewed effort to

get off the jury, Judge Hitpas observed: "Apparently, he has had overnight to think about trying to get off again, and this was another method. He couldn't remember his girlfriend's name who happens to be friends with Melissa. I am not even sure any such person exists *** ."

Mr. Pirtle was a juror who went home and discussed the case with certain family members who knew the attempted murder victim and, according to Pirtle, sided with him against the defendant, during their discussions. He was removed, at the defendant's urging and over the State's objection. Immediately upon the removal of Pirtle, Judge Hitpas returned to the issue of juror Buckner and stated, "I think he is just trying to get off [the jury]," implying that he did not believe that Buckner had a girlfriend who knew the victim or that his sworn duty to be fair and impartial became harder to fulfill because of it.

This is what the judge and counsel had to say after the removal of Pirtle and Buckner from the panel:

"THE COURT: We are out of jurors. And I don't like it, but I think *** *in fairness to both sides,* Pirtle is bad for you (addressing defense counsel). Buckner is bad for you (addressing the assistant State's Attorney). I think Buckner is a[-]lying in the weeds.

THE STATE: I agree.

THE COURT: He is just lying in the weeds to be unfair, and my interest here is not that anybody wins. My interest is that it's fair.

MR. VELTMAN [defense counsel]: I understand.

THE COURT: *And I think we have got Buckner lying in the weeds to be unfair one way, and we have Mr. Pirtle[,] who may well try but would probably have a hard time being fair the other way.* I am not crazy about this, but in light of this, I will have to declare a mistrial." (Emphasis added.)

Contrary to the assumption made in the majority's analysis, no one—not the State, not the defendant, and especially not the trial judge—thought that Buckner harbored a potential bias to convict. Just the opposite was true. That is why defense counsel worked so hard to keep him on the jury, despite his efforts to get off. And that is why I respectfully depart from the analysis that the majority opinion sets forth.

If what really happened was as the majority says, and Buckner was removed to protect the defendant's interest in fairness, I would have to question the propriety of the action. All jurors harbor the potential for some degree of bias. I do not think that judges should assume "it's for your own good" attitudes and knowingly destroy the right to a verdict by a jury of one's choosing because of some remote chance of bias against the defendant. This is particularly so where, as

here, the claimed circumstance carried so little reason for a bias to convict and the defendant expressed such faith in the juror and such a desire to keep him.

Since I believe that the reasons for the removal were other than those stated in the majority opinion, I agree with the outcome that the majority reaches. Accordingly, I specially concur.